**DAIRYLAND INSURANCE COMPANY, Appellant,**

**v.**

**Lyle MUMERT d/b/a "The Office" Tavern, Appellee.**

**No. 55866.**

Supreme Court of Iowa.

Nov. 14, 1973.

Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, and Robin L. Hermann, Des Moines, for appellant.

Klockau, McCarthy, Schubert, Lousberg, Ellison & Rinden, Rock Island, Ill., and Cornwall, Avery & Berg, Spencer, for appellee.

Heard by MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REES, Justice.

This appeal is from an order of trial court sustaining defendant's motion to dismiss petition of plaintiff asking contribution from defendant for settlement arrived at between plaintiff and the owner and occupants of an automobile with which plaintiff's insured came into collision while the insured was allegedly intoxicated.

In its petition, plaintiff alleged it was a foreign corporation duly licensed and authorized to transact in Iowa the business of writing and issuing automobile liability insurance policies. It further alleged that defendant Mumert, d/b/a "The Office" Tavern, is an individual, a resident of Cherokee, operating a tavern or dram shop at Cherokee, and that he is or was a licensee or permittee subject to the rules and regulations of chapter 123, The Code, 1971.

Plaintiff further alleged that at all times material it had in full force and effect a policy of automobile liability insurance it had issued to one Raymond Ware, and which insured Ware against legal liability for damages done by his automobile while being driven by himself, and that on or about December 3, 1971 defendant sold to Ware beer or liquor while Ware was in an intoxicated condition or to the extent that he became intoxicated. It further alleged that Ware, on December 3, 1971, after leaving defendant's place of business in an intoxicated state, drove his automobile in such a careless and negligent manner as to collide with an automobile owned by one Hiniker and being then and there operated by Hiniker's wife, and in which vehicle the minor daughter of the Hinikers was riding as a passenger.

Plaintiff further alleged in its petition that as a consequence of said collision the motor vehicle was damaged in the amount of $1362.75, and that the occupants Ilene Hiniker and Linda Hiniker sustained injuries. Plaintiff further alleged that subsequent to the collision, and after it had investigated the causes thereof and the extent of the damages, it entered into a settlement agreement with Owen Hiniker, Ilene Hiniker and Linda Hiniker, and paid to them for a release the sum of $2682.57, which represented a fair and reasonable payment for the property damage and physical injuries incurred as the result of the collision. Plaintiff further asserted there was in fact common liability between the defendant Mumert and its insured Ware to the Hinikers, and that defendant and plaintiff's insured Ware were concurrent tort-feasors the defendant's negligence being predicated on his violation of chapter 123, The Code, 1971, and the negligence of its insured Ware being predicated upon his statutory and common-law violations of the law of the road. Plaintiff demanded judgment and contribution from the defendant in the amount of $1341.29 and interest.

Defendant's motion to dismiss was on the grounds that the petition of plaintiff was insufficient at law and failed to state a cause of action for the reason that said cause of action for contribution had been abolished as to the defendant by virtue of chapter 131, Acts of the 64th General Assembly, 1st session, which became effective on January 1, 1972, and that since the

plaintiff had not made settlement with the Hinikers until February 1, 1972, its cause of action did not arise until the latter date, and that as a consequence of its settlement subsequent to the effective date of the act of the 64th General Assembly referred to, that plaintiff was barred by the aforementioned statute from recovering against the defendant. Trial court sustained the motion to dismiss on July 7, 1972, and later enlarged its ruling in conformity with plaintiff's application for enlargement thereof on August 18, 1972. From such order sustaining defendant's motion to dismiss, plaintiff appeals. We affirm.

Plaintiff assigns two errors upon which it relies for reversal

(1) The court erred in holding plaintiff's cause of action for contribution was barred by section 94 of chapter 131 of the laws of the 64th G.A., 1st session; and

(2) Trial court erred in holding section 94 of chapter 131 of the laws of the 64th G.A., 1st session, constitutional.

I. Plaintiff contends its action for contribution against defendant is not precluded by the provisions of chapter 131, section 94, Acts of the 64th General Assembly, 1st session, which now appears as section 123.-94, The Code, 1973. The act which took effect January 1, 1972, provides as follows:

"No right of action for contribution or indemnity shall accrue to any insurer, guarantor or indemnitor of any intoxicated person for any act of such intoxicated person against any licensee or permittee as defined in this act."

The accident which gives rise to the common liability of plaintiff and defendant to the injured third parties happened before the effective date of the above recited statute, and on December 3, 1971. The settlement, and actual payment by plaintiff to the injured parties—Hinikers—was on February 1, 1972, one month after the effective date of the statute. The question for our determination here, then, is when a

right of action for contribution *accrues* for the purposes of section 123.94, The Code, 1973 (chapter 131, § 94, Acts of the 64th G.A., 1st session).

Both parties to this appeal concede that absent the statutory enactment of section 123.94, an intoxicated driver or his insurer who has paid damages to a third person injured by the driver could recover contribution from the vendor of the liquor. See Federated Mutual Implement & Hardware Ins. Co. v. Dunkelberger, 172 N.W.2d 137 (Iowa 1969). Plaintiff further asserts that despite the legislative prohibition against contribution or indemnity recovery provided for in section 123.94, The Code, there still remains in Iowa a common-law right to contribution between negligent concurrent tort-feasors, and we agree. Best v. Yerkes, 247 Iowa 800, 77 N.W.2d 23, 60 A.L.R.2d 1354; Allied Mutual Casualty Co. v. Long, 252 Iowa 829, 107 N.W.2d 682; Fane v. Hootman, 254 Iowa 241, 117 N.W.2d 435; Iowa Power & Light Co. v. Abild Const. Co., 259 Iowa 314, 144 N.W.2d 303.

In 18 Am.Jur.2d, Contributions, § 46, p. 66, we find:

"It is important to note, however, the distinction between the accrual of the right to *recover* contribution and the inchoate right to contribution before payment or discharge of the common liability. Even though a cause of action for contribution does not become complete until the claimant's act of payment or discharge of more than his equitable share of the common liability, generally a right to be protected against an unfair exaction—an incidental or inchoate right to compel contribution—comes into being and becomes the property right or interest of a tortfeasor the instant the joint or concurring acts of himself and other tortfeasors give to the injured person a cause of action against them—in other words, when the common liability arises. Such right is in a sense an incident which follows the principal event out of which

the injured person's cause of action arises, and once in being, although contingent, subordinate, or inchoate, it is nonetheless real and subsisting, and has an existence in contemplation of law until it is no longer needed as a resource to which the joint tortfeasor may look for relief from an imposition upon him of an inequitable share of the burden on account of the joint tort, provided he does not in the meantime waive or give up such right. This inchoate right arises as soon as the acts of the joint wrongdoers raise the injured person's cause of action against them; it does not depend upon an action against them being commenced. It is held that even death of a joint tortfeasor after the negligent act has fixed the right of contribution upon the common liability does not destroy such right nor interfere with its legal growth into an accrued cause of action."

And, at 18 Am.Jur.2d, Contribution, § 9, pp. 20–21, we further find:

"While it is true that a common burden or obligation resting upon the parties is essential to the accrual of the right of contribution, no cause of action therefor arises merely because of the relationship of the parties or because of the claimant's liability on such obligation. The right to contribution is inchoate or subordinate from the time of the creation of the relationship giving rise to the common burden until the time of payment by a co-obligor of more than his proportional share, and as a rule, the right to contribution becomes complete and enforceable only upon a payment or its equivalent by the claimant discharging, satisfying, or extinguishing the whole or more than his just and equitable share of the common obligation, provided the obligation is due at the time. Or, stated in terms applicable to actions at law, the implied promise to contribute is considered as made at the time the common liability is assumed, and the

right to sue thereon arises when a party has paid or satisfied the whole of the obligation or more than his share thereof."

The foregoing principles are summarized succinctly in 18 C.J.S. Contribution § 4, p. 7:

"The right to contribution is inchoate from the date of the creation of the relation between the parties, but is not complete, so as to be enforceable, until there has been an actual payment, in whole or in part, of the common obligation or until something is done equivalent to a discharge thereof."

Section 123.94, The Code, 1973, and its antecedent Act of the General Assembly, commands that "[n]o right of action for contribution * * * shall *accrue* * * *."

The word "accrue" is defined by Webster's Third New International Dictionary, Unabridged Edition, as meaning, "1. To come into existence as an enforceable claim; vest as a right."

In Moran v. Moran, 144 Iowa 451, 460, 123 N.W. 202, 205, in considering the effect of a foreign statute of limitations upon a domestic contract, this court said:

"While technically speaking there is perhaps no such thing as a 'cause of action' on a promissory note until it is due and the holder is entitled to sue thereon, there is a sense in which such cause exists from the moment when the promise becomes a legal and binding obligation. True, it is an imperfect or inchoate right, but it is none the less real. The right to institute action 'accrues' when by maturity of the note and default in payment the holder may maintain a suit thereon, but it 'arises' or has its origin in the transaction which brought the obligation into existence."

We again spoke to this distinction in Dean v. Iowa-Des Moines Nat'l. Bank & Trust Co., 227 Iowa 1239, 1242, 281 N.W.

714, 717 (modified on rehearing 290 N.W. 664, 128 A.L.R. 137), as follows:

"True, there was an existing *contract*, and there is a sense in which a cause of action *arises* or has its origin in the transaction which brings the contract into existence. And in our statutes of limitation the legislature has used both phrases, 'cause of action arises' and 'cause of action accrues.' But these phrases are used by the legislature in a manner clearly indicating an attempt to express different ideas. The cause of action does not *'accrue'* until plaintiff is entitled to sue thereon."

█ We are concerned here with the right of plaintiff to institute and maintain suit for contribution within a chronological sequence of events. There is a parallel in the statute of limitation cases and the principles stated therein for justifying our conclusion that a cause of action accrues when the right becomes complete and enforceable.

Plaintiff cites several cases from sister jurisdictions which deal with the creation of the right to contribution for purposes other than in a limitation of actions setting. Typical of these is Western Casualty & Surety Co. v. Milwaukee General Const. Co., 213 Wis. 302, 251 N.W. 491, which involved the issue of whether or not a joint tort-feasor was entitled to bring a claim for contribution against a cotort-feasor where the third party plaintiff had settled with the injured party prior to commencement of any litigation. In permitting the third party plaintiff to bring an action for contribution under such circumstances, the Wisconsin court said, at page 492 of 251 N.W.:

"Logically, it would appear that the right [of contribution] comes into being when the combination of negligent acts gives force and direction to events necessarily resulting in an occasion for paying damages. * * * It has its incep-

tion at the time the negligence of the alleged joint tort-feasors concurs to bring the injuries to the third person. It springs up at the time, and then and forever afterwards, until the claim is outlawed, they or either of them are under a liability to pay for injuries their negligent acts have caused. *This inchoate right ripens into a cause of action when one of the joint tort-feasors pays more than his proportionate share of the claim for which all are liable."* (Emphasis ours).

In accord, see also DeBrue v. Frank, 213 Wis. 280, 251 N.W. 494; Consolidated Coach Corp. v. Burge, 245 Ky. 631, 54 S. W.2d 16, 85 A.L.R. 1086.

█ There is no question but that a right to contribution *arises* between negligent concurrent tort-feasors at the time common liability toward a third party comes into being. However, for purposes of determining when a "right of action for contribution * * * shall *accrue"* for the purposes of section 123.94, The Code, we are constrained to hold that a complete and enforceable right to compel contribution does not *accrue* until one tort-feasor has discharged more than his proportionate share of the common obligation. To this effect, see Hawkeye-Security Ins. Co. v. Lowe Const. Co., 251 Iowa 27, 33, 99 N.W.2d 421, 426, in which the court discussed the right of contribution in a release context, and generally, see Prosser, Law of Torts, Fourth Ed. § 50, p. 309. The particular wording of § 123.94, The Code, does not serve to deny the inchoate right of contribution arising from common liability of concurrent tort-feasors, which plaintiff has pointed out; however, we must conclude that the statute does serve to deny enforcement of that right against liquor vendors when it becomes complete and absolute upon disproportionate payment by an insurer.

Plaintiff argues that this court has implicitly recognized a "right to bring an ac-

tion for contribution prior to the time that any payment whatsoever has been made to the injured third party" in Fane v. Hootman, *supra*. In *Fane*, the court held that a contingent claim for contribution based on a possible finding of concurring negligence could be pleaded in the main action of plaintiff by a defendant against a third party defendant, by virtue of the provisions of rule 33(b), Iowa Rules of Civil Procedure.

We are not, however, disposed to extend the rule, as plaintiff would have us do, beyond the confines of a rule 33(b) analysis of the function of a cross-petition and the rationale of permitting the same. In Fane v. Hootman, *supra,* the trial court had to first decide who was, or who were, the tort-feasors, an issue which presented a classic situation for bringing in a new party under rule 33(b). We are not confronted with the same situation in the matter before us, and Fane v. Hootman is, therefore, distinguishable.

We conclude, therefore, the cause of action did not accrue until payment by plaintiff on February 1, 1972, and that trial court's ruling in this regard was correct.

■ II. In its second assignment of error, plaintiff asserts the trial court erred in its holding that section 123.94, The Code, 1973 and the antecedent Act of the General Assembly, is constitutional because the preclusion of the right of the intoxicated's insurer to compel contribution from the vendor of the liquor is "unreasonable, arbitrary, capricious and invidiously discriminatory", both on its face and as applied by the court.

We have repeatedly said that if a state legislative enactment classifies various parties for purposes of regulation, and that classification is neither premised on suspect criteria nor infringes upon a fundamental right, the presumption of constitutionality attaches and the statute will be set aside as violative of due process or equal protection only if it is arbitrary and without foundation in public policy, its means are unrelated to its objectives, or distinctions drawn therein are invidious and lack rational basis incapable of justification under any conceivable set of facts. See generally State v. Vick, 205 N.W.2d 727 (Iowa 1973); In re Henderson, 199 N.W.2d 111 (Iowa 1972); Brown Enterprises, Inc. v. Fulton, 192 N.W.2d 773 (Iowa 1971). We are unable to perceive any way in which § 123.94, The Code, is based upon a classification which is suspect or which involves a "fundamental right" as denominated by the Supreme Court of the United States. The presumption of constitutionality, therefore, attaches and the burden is on plaintiff to counter such presumption.

The trial court's ruling upholding the constitutionality of the statute was based on the rationale that where the legislature creates a right of action against dram shop operators, it can also limit the availability of that right when policy dictates; for instance, when the legislature desires to give the insurer only such rights as its intoxicated insured may have.

No common-law cause of action exists in Iowa against dram shop operators. Cowman v. Hansen, 250 Iowa 358, 92 N.W.2d 682. The legislature, consistent with its police power to regulate the sale and consumption of intoxicating liquors, has seen fit to provide exclusive right of action against vendors of liquor through the statutory scheme of the Dram Shop Acts, prescribing the remedies therein as well.

The plaintiff does not challenge the proposition that an intoxicated person has been excluded from coverage under the Dram Shop Acts, thereby precluding that person from having a right of action against the dram shop operator. The legislative enactment of § 123.94, The Code, was obviously responsive to the ruling of

this court in Federated Mutual v. Dunkelberger, *supra*, which permitted the insurer of an intoxicated person to maintain a cause of action against the vendor of liquor furnished its insured. It was the obvious intent of the legislature not to give the insurer of an intoxicated person any more rights than its insured had. This is consistent with the obvious rationale behind prohibiting an intoxicated person from shifting to a dram shop operator any loss occasioned by the consequences of his own drunken acts, but it can also be reasoned, as defendant notes in argument, that the legislature did not desire to encourage irresponsible indulgence in liquor, either directly or indirectly, by making it more advantageous to insurers to have their insureds drunk at the time they occasioned damage to third parties, so that insurance losses could be recouped from a dram shop operator.

Plaintiff suggests several hypothetical situations in support of its contention that the singling out of an insurer of an intoxicated person for the limitation of a right of action is a clearly irrational distinction without justifiable basis. Even if we were to concede that the hypothetical situations suggested by plaintiff might be valid criticisms of the statute, we must observe that this is a question for the legislature, and not for this court. Farrell v. State Board of Regents, 179 N.W.2d 533, 537 (Iowa 1970), and citations.

In Evans v. Kennedy, 162 N.W.2d 182 (Iowa 1968), we held that as no right of action is given an intoxicated person to recover for his injuries under the Dram Shop Acts, an administrator of his estate has no such right of action. Although perhaps not directly in point, we refer to the annotation in 31 A.L.R.3d 438 (Intoxicating Liquors: Right of One Liable Under Civil Damage Act to Contribution or Indemnity from Intoxicated Person or Vice Versa); Annot., 26 A.L.R.3d 1283 (Right of Third Person to Recover Contribution from Host Driver for Injuries or Death of Guest, Where Host is not Liable to Guest Under Guest Statute); Iowa Power & Light Co. v. Abild Const. Co., *supra*, (Effect of Special Defense—Workmen's Compensation—on Right to Recover Compensation from Joint Tort-feasor).

We conclude the trial court was correct in its ruling that section 123.94, The Code, and its antecedent act of the General Assembly, was constitutional.

This case is, therefore, affirmed.

Affirmed.