Richard Allen HAAFKE and Ruth Marie Haafke, Individually and As Administrators Of The Estate of Robert Gordon Haafke, Deceased, Appellants,

v.

Ray V. MITCHELL, a/k/a Ray V. Mitchell, Sr., Individually And d/b/a "the Sugar Bowl"; Merchants Mutual Bonding Co., Des Moines, Iowa; Dennis B. Garvis; Merle Kingsbury; Lucille Kingsbury; Connie Backman; Lee Quade; Bob Saunders a/k/a Robert L. Saunders; and Chuck Miller a/k/a Chuck E. Miller, Appellees.

No. 69483.

Supreme Court of Iowa.

April 11, 1984.

Rehearing Denied May 10, 1984.

J. Allen Orr, Sioux City, for appellants.

Gerry M. Rinden and Raymond Conklin, of Klockau, McCarthy, Ellison, Rinden & Hartsock, Rock Island, Ill., for appellees.

LARSON, Justice.

Robert Haafke was killed in an automobile accident allegedly resulting from the intoxication of his host driver caused, or contributed to, by these defendants. This suit was based upon Iowa's dram shop act, Iowa Code section 123.92, and traditional principles of common-law liability. Joined as defendants were Ray V. Mitchell, a liquor licensee, as well as Garvis, Backman, Quade, and Saunders, his employees, the Kingsburys as owners of the tavern property, and Merchants Mutual Bonding Company, surety on the licensee's dram shop bond. Actual and exemplary damages were demanded from all defendants.

The district court, concluding that Iowa's dram shop statute preempts the field of civil liability, dismissed all the claims based upon common law and held that the dram

shop act, directed at "any licensee or permittee," precludes a direct suit against a surety on a licensee's bond. It also struck all claims for exemplary damages and struck the plaintiffs' claim for "grief, mental anguish, remorse and humiliation." We affirm in part and reverse in part.

The plaintiffs alleged that their son, Robert Haafke, and a companion, defendant Chuck Miller, went to the Sugar Bowl Tavern on the evening of the accident. Miller was under the "legal age" of 19 (Iowa Code section 123.3(33)) and was intoxicated at the time, facts that the plaintiffs allege were known to the employees who nevertheless served liquor to Miller. They also allege that the defendants knew or should have known that Miller had a propensity to "behave irrationally" when drunk, that he had a high-speed car and would likely be driving it when he left the Sugar Bowl that night. They also alleged that the defendant Mitchell, operator of the Sugar Bowl Tavern, was a Class C Beer Permit holder and was bonded by the defendant Merchants Mutual Bonding Company as surety.

The Sugar Bowl, they allege, had catered to youthful patrons on the night of the accident, by running a "dollar pitcher" special and permitted participation in a "quarter game" in which the losers were required to become intoxicated. The Sugar Bowl was well known by all of the defendants to be a "hang-out" for underage patrons and that it catered in particular to a trade by underage customers, according to the petition. (It should be noted that the legal age for drinking is 19, Iowa Code section 123.3(33), whereas the age of majority is 18 for other purposes. *See* Iowa Code § 599.1. Because most cases dealing with sale of intoxicants to underage customers are couched in terms of their being "minors," we will use that term in this opinion, although there is a difference. We also note that the sales to Miller are variously referred to as sales of liquor and of beer. There is no record to establish which was actually served, and it makes no difference for our purposes. For the sake of uniformity, we will assume the sales were liquor sales.)

Following their stay at the Sugar Bowl, Miller and Haafke left in Miller's car. Miller was driving. The car struck a tree, killing Haafke. Miller lived and although he is a party to the suit, the issues pertaining to him are not involved in this interlocutory appeal.

I. *The Issues.*

At the outset, we have difficulty in determining just what the issues are on appeal. The plaintiffs' brief is of little help. Their brief states the two issues relating to liability as follows: (1) "The trial court erred in holding that anyone may serve liquor to a minor except licensees and permittees under the Iowa dram shop act, [section] 123.-92" and (2) that it erred "in holding that anyone may serve liquor to a minor under the Sioux City Municipal Code [section] 4.32.180."

The district court did not rule "anyone" may serve liquor; it ruled only that, as a matter of law, certain defendants could not be held liable for doing so. From examination of the appellants' brief, on the issues of liability, this appears to be their argument: that violations of state statutes and a Sioux City ordinance, which prohibit sales to minors and to intoxicated persons, give rise to common-law liability of all of the defendants (including the bonding company and the owners of the premises) "without the aid or interference of the dram shop act." The thrust of the argument seems to be that, contrary to the district court's ruling, common-law liability may be predicated upon a violation of the criminal statute and is not preempted as to any of the defendants by the dram shop statute.

■ We first turn to the claim against Merchants Mutual Bonding Company, surety on the license bond required of Mitchell. *See* Iowa Code § 123.92. The district court order dismissing as to Merchants gave no specific reasons for its ruling. We note, however, that it cited the case of *Cochran v. Lovelace*, 209 N.W.2d 130 (Iowa 1973), which had held that a surety could not be sued directly under the dram shop act, be-

cause it was not a "licensee or permittee" within its terms. The plaintiffs do not ask us to overrule *Cochran* or to distinguish it. Even under the broad reading which we have accorded the appellants' brief in order to identify the issues, we cannot find that they have preserved any issues as to the dismissal of Merchants. We deem the issue waived. *See* Iowa R.App.P. 14(a)(3). As to defendants Merle Kingsbury and Lucille Kingsbury, a fair reading of the petition as amended indicates the claim against them is based solely upon their ownership of the premises involved. No argument or authority is submitted on appeal to support such a claim, and we deem this issue waived as well. *Id.*

We turn then to the issues remaining in this appeal. In addition to the issue of the common-law liability discussed above, two issues are raised as to damages: May exemplary damages be recovered from the defendants under either the dram shop statute or common law; and may damages for "grief, mental anguish, remorse and humiliation" be recovered under either our statute on wrongful death damages, Iowa Code section 613.15, or the dram shop act itself. We address the liability issue first.

II. *The Common-Law Claim in General.*

Plaintiffs allege that all of the defendants are liable under common law because the sale of beer here was "careless, heedless, wanton and malicious" and was illegal under two statutes, Iowa Code section 123.-49(1) (sale to intoxicated persons) and section 123.47 (sale to minors). The defendants respond that, as to a licensee, the dram shop act is the exclusive remedy. Further, they claim that as to all of the other defendants, there is no remedy at all because the dram shop act preempts the entire field of tort liability for illegal or negligent sale of intoxicating beverages.

The dram shop act, Iowa Code section 123.92 provides in part:

123.92 *Civil liability applicable to sale or gift of beer or intoxicants by licensees.* Every husband, wife, child, parent, guardian, employer or other person who

shall be injured in person or property or means of support by any intoxicated person or resulting from the intoxication of any such person, shall have a right of action, severally or jointly, against any licensee or permittee, who shall sell or give any beer or intoxicating liquor to any such person while he or she is intoxicated, or serve any such person to a point where such person is intoxicated, for all damages actually sustained. If the injury was caused by an intoxicated person, a permittee or licensee may establish as an affirmative defense that the intoxication did not contribute to the injurious action of the person.

■ Initially, dram shop statutes were enacted to provide a recourse in an area where courts had refused to recognize a cause of action arising out of the furnishing of intoxicating beverages. The basis of the courts' refusal to recognize a common-law claim was that, as a matter of law, the furnishing of intoxicating beverages could not be the proximate cause of the ultimate damages. *See* 48A C.J.S. *Intoxicating Liquors* § 428, at 134 (1981); 45 Am.Jur.2d *Intoxicating Liquors* § 553, at 853 (1969). Iowa case law was in accord. *See Cowman v. Hansen*, 250 Iowa 358, 373, 92 N.W.2d 682, 690 (1958). *Cowman* was followed in several later cases, *e.g., Robinson v. Bognanno*, 213 N.W.2d 530, 531 (Iowa 1973); *Dairyland Insurance Company v. Mumert*, 212 N.W.2d 436, 441 (Iowa 1973); *Williams v. Klemesrud*, 197 N.W.2d 614, 617 (Iowa 1972); *Federated Mutual v. Dunkelberger*, 172 N.W.2d 137, 139 (Iowa 1969).

This remained the state of the law in Iowa until our decision in *Lewis v. State*, 256 N.W.2d 181 (Iowa 1977), which involved an illegal sale of liquor to a minor by an employee of a state liquor store. *Lewis* held that proximate cause in liquor cases, as in others, was an issue to be resolved by the fact-finder, not by a rule of law denying recovery in all cases. It therefore expressly overruled the *Cowman* line of cases. *Id.* at 191–92.

In *Lewis* we discussed the effect of a violation of a criminal statute, sale to a minor, and determined that the criminal statute prescribed a standard of conduct applicable to civil cases as well. We also pointed to the express purpose of the liquor control act which was "the protection of the welfare, health, peace, morals, and safety of the people of the state." Iowa Code § 123.1. We concluded:

> In light of the [cited] authorities and the declared policy of chapter 123 it is our view section 123.43 [sale to minors] sets a minimum standard of care for conduct generally required of the reasonably prudent man under like circumstances for purposes of a common law action of negligence based on the sale or the furnishing of intoxicating liquor.

*Lewis*, 256 N.W.2d at 189.

The dram shop statute was inapplicable in *Lewis* because, as a strict liability statute, there was doubt whether it could be enforced against the state under our tort claims act. *Id.* at 192. In any event, the dram shop statute was not pled as the basis of liability in *Lewis*. Because the act was inapplicable, *Lewis* did not address the specific issue raised here: whether the dram shop act, when applicable, preempts all other claims.

■ The elements of a tort claim, generally, are (1) the existence of a duty to conform to a standard of conduct for the protection of others; (2) failure to conform to that standard; (3) a reasonably close causal connection, *i.e.*, "legal cause" or "proximate cause"; and (4) damages. W. Prosser, *Handbook of the Law of Torts*, § 30, at 143 (4th ed. 1971).

■ The specific standards of conduct alleged here are prescribed by our criminal statutes, specifically Iowa Code section 123.47, prohibiting sale to minors, and section 123.49(1) prohibiting sale to intoxicated persons, as well as a Sioux City ordinance which prohibits both. The first elements are therefore satisfied. We held in *Lewis* that, because a major purpose of a criminal statute on sales to minors was to protect the public, violation of that statute was

sufficient to satisfy the "negligence" criteria, or the first two elements above. *Lewis*, 256 N.W.2d at 189. *See also Restatement (Second) of Torts* § 286 (1965). Proximate cause and damages are also alleged. It is clear, then, that these plaintiffs have alleged a sufficient cause of action in tort unless, as the defendants claim, a different rule must apply because it is a liquor case. It is also clear under general rules of agency law that an agent is liable for acts of his own negligence even though done in the course of his employment and even if done at the express directions of his employer. *See Restatement (Second) of Agency* § 343 (1958).

The defendants do not challenge *Lewis;* in fact, they concede that Iowa now recognizes a common-law action for an illegal sale of intoxicants independent of the dram shop act. Their argument is, however, that when any aspect of an "occurrence" is covered by the dram shop act, the cause of action provided against licensees or permittees shields all other defendants from any form of liability.

We have held that, because liability of licensees and permitees is provided for in section 123.92, that that section provides the exclusive remedy as to *them*. *See, e.g., Snyder v. Davenport*, 323 N.W.2d 225 (Iowa 1982). *Snyder* expressly reserved the question of whether a common-law action may be maintained in cases where the dram shop act is totally inapplicable. *Id.* at 228, n. 2. In the present case, the issue is close to that reserved in *Snyder:* does common-law liability lie against certain *parties* as to whom the dram shop act is inapplicable?

We have never held that the statute preempts the entire field of liability or that it shields parties as to whom there is no statutory remedy. The implication of *Lewis* is clearly the contrary. In that case, although a dram shop cause of action did exist, this court found a parallel cause of action at common law.

The defendants do not cite any authority directly supporting this view of preemption

nor have we found any. This is perhaps explained by the fact that the Iowa dram shop statute is considerably narrower than most, leaving a larger "no-man's land" in which recovery, if any is to be permitted, will depend upon traditional tort principles. For example, Iowa's act applies only when a specific criminal statute, sales to intoxicated persons, is violated, in contrast to most acts which do not even require that the sale be illegal. And our act applies only to "any licensee or permittee" in contrast to most acts which apply to "any person" or its equivalent.

The thrust of the defendants' argument here is that, since liability of a licensee is provided by the statute, no other party—including the employees who actually made the illegal sales—may be sued, even though in any factual context not involving sale of intoxicants their alleged illegal and malicious acts would subject them to liability. Notwithstanding the allegations of illegality of the sales, of the defendants' knowledge of the consequences of the illegal sales, and proximate cause, they cannot be liable as a matter of law, according to their argument.

There is nothing in the dram shop act itself to suggest it should be used to narrow the thrust of the common-law claim. As previously noted, the whole purpose of such acts is to allow recovery where none was allowed before. As we said in another case where legislative preemption was urged,

> [i]t would be strange if the legislature, by stepping in to modify the harshness of the common-law defense ... should be held to have preempted the field, freezing the development of the common law at that point, and disabling the courts from subsequently changing the doctrine in any other respect.

*Goetzman v. Wichern,* 327 N.W.2d 742, 748 (Iowa 1982).

In *Lewis,* we decided that continued recognition of the old common-law rule denying liability would "perpetuate the injustice and hardship" in it. 256 N.W.2d at 191. The thrust of *Lewis* was, just as the purpose is in the enactment of the dram shop act itself, a broadening of the right of recovery for the illegal furnishing of intoxicants. The defendants' view of *Lewis,* that permits common-law recovery only when *no one* in the picture is covered by the dram shop act does nothing to further this purpose. It is rather a "half a loaf" argument that protects the interests of all persons involved in the beer and liquor business other than licensees but falls short of furthering the specific goal of the dram shop statute itself or the broad purposes of the entire liquor control act, stated by Iowa Code section 123.1:

> This chapter shall be cited as the "Iowa Beer and Liquor Act", and shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose, and it is declared to be public policy that the traffic in alcoholic liquors is so affected with a public interest that it should be regulated to the extent of prohibiting all traffic in them, except as provided in this chapter.

*See also Lewis,* 256 N.W.2d at 189 (purpose of liquor control act as one ground for recognizing common-law liability).

As the Ohio Supreme Court stated in *Mason v. Roberts,* 33 Ohio St.2d 29, 32, 294 N.E.2d 884, 887 (1973), "[i]t defeats the real purpose of the enactment of the [dram shop] statute to twist it into an immunity bath for all other cases."

The defendants' "occurrence" argument could work an injustice to injured parties by limiting the strategic choices available to them in every other kind of tort case as to whom among joint tortfeasors will be sued. A plaintiff could sue a licensee, but only a licensee. This theory could also unfairly limit a claimant's recovery, in the event of a licensee who, for whatever reason, is not good for a judgment. It is well known that persons contemplating entry into a relatively high-risk business sometimes shield their assets by transferring

them as a hedge against possible judgments. The bond or insurance required by section 123.92, moreover, is only $10,000, woefully low in this day and age. *See* Iowa Admin.Code, *Beer and Liquor* [150] § 5.8.

Even the benefits of such a theory would be erratic in their application to nonlicensee defendants. For example, a sale to a customer who is a minor would subject an employee to common-law liability under the defendants' theory, as this "occurrence" is not within the scope of the dram shop act, which is limited to sales to intoxicated persons. Iowa Code section 123.92. If, on the other hand, the employee should be fortunate enough that the minor was also intoxicated when served, he would be shielded from liability, because this "occurrence" does fall within the act and the licensee's liability would be a shield for all others. This fortuitous event would be a pure windfall to the negligent defendant and would advance no general public policy.

█ Nor can it be argued that a common-law action based on traditional negligence concepts is inconsistent with the dram shop act, at least as to the defendants who are not covered by the act. Plaintiffs suing under common-law principles, as opposed to the dram shop act, must prove the traditional elements of a tort, including a duty, its breach, and proximate cause of damages. *See* W. Prosser, *supra*, at 143. As this court has noted, the dram shop statute is a strict liability statute imposing liability without proof of negligence or proximate cause. *See Williams*, 197 N.W.2d at 617; *Wendelin v. Russell*, 259 Iowa 1152, 1158, 147 N.W.2d 188, 192 (1966); W. Prosser, *supra*, § 81, at 538, 45 Am.Jur.2d *Intoxicating Liquors* § 562, at 859 (1969); Schubert, *The Iowa Dram Shop Act—Causes of Action and Defenses*, 23 Drake L.Rev. 16, 20–22 (1973). While it is reasonable to assume that the legislature chose to limit strict liability to persons such as licensees or permittees who furnish intoxicants as a part of their business, it is not reasonable to assume it was intended to be a shield for all other

persons against any form of liability where negligence and proximate cause are established. We think this is a clear import of *Lewis*.

The expanding view of common-law liability is evident in other jurisdictions which have found liability under similar facts. *See, e.g., Waynick v. Chicago's Last Department Store*, 269 F.2d 322 (7th Cir. 1959) (sale in violation of criminal statute held to be basis for common-law claim); *Phillips v. Derrick*, 36 Ala.App. 244, 54 So.2d 320 (1951) (illegal sale to minor); *Nazareno v. Urie*, 638 P.2d 671 (Alaska 1981) (sale violated minor-sale statute); *Vesely v. Sager*, 5 Cal.3d 153, 486 P.2d 151, 95 Cal. Rptr. 623 (1971) (illegal sale to intoxicated person) (result subsequently abrogated by legislature); *Burke v. Superior Court*, 129 Cal.App.3d 570, 181 Cal.Rptr. 149 (1982) (common-law claim based on violation of minor-sale statute); *Kerby v. Flamingo Club, Inc.*, 35 Colo.App. 127, 532 P.2d 975 (1974) (illegal sale to minor); *Davis v. Shiappacossee*, 155 So.2d 365 (Fla.1963) (illegal sale to minor); *Alegria v. Payonk*, 101 Idaho 617, 619 P.2d 135 (1980) (sale to intoxicated, minor customer); *Elder v. Fisher*, 247 Ind. 598, 217 N.E.2d 847 (1966) (illegal sale to minor); *Brattain v. Herron*, 159 Ind.App. 663, 309 N.E.2d 150 (1974) (common-law liability of social host who violated statute prohibiting furnishing to minor); *Pike v. George*, 434 S.W.2d 626 (Ky.Ct.App.1968) (illegal sale to minor); *Adamian v. Three Sons, Inc.*, 353 Mass. 498, 233 N.E.2d 18 (1968) (illegal sale to intoxicated person); *Ramsey v. Anctil*, 106 N.H. 375, 211 A.2d 900 (1965) (illegal sale to intoxicated person); *Rappaport v. Nichols*, 31 N.J. 188, 156 A.2d 1 (1959) (common-law action based on violation of criminal statute prohibiting sale to minor; court noted this would advance protected policy of the criminal statute); *Lopez v. Maez*, 98 N.M. 625, 651 P.2d 1269 (1982) (violation of intoxicated person criminal statute); *Berkeley v. Park*, 47 Misc.2d 381, 262 N.Y. S.2d 290 (N.Y.Sup.Ct.1965) (complaint based on sale to intoxicated person stated claim at common-law and under dram shop act); *Mason v. Roberts*, 33 Ohio St.2d 29,

294 N.E.2d 884 (1973) (illegal sale to intoxicated person); *Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity*, 258 Or. 632, 485 P.2d 18 (1971) (illegal furnishing to minor); *Majors v. Brodhead Hotel*, 416 Pa. 265, 205 A.2d 873 (1965) (illegal sale to intoxicated person); *Jardine v. Upper Darby Lodge*, 413 Pa. 626, 198 A.2d 550 (1964) (common-law claim based on violation of statute prohibiting sale to intoxicated person); *Smith v. Clark*, 411 Pa. 142, 190 A.2d 441 (1963) (common-law liability based on statute prohibiting sale to minors); *Walz v. City of Hudson*, 327 N.W.2d 120 (S.D.1982) (common-law claim based on statute prohibiting sale to intoxicated person); *Callan v. O'Neil*, 20 Wash. App. 32, 578 P.2d 890 (1978) (suit against tavern owner and employee based on violation of criminal minor-sale statute).

III. *Application to Parties Other Than Licensees and Permittees.*

■ The defendants Garvis, Backman, Quade, and Saunders are employees of the Sugar Bowl Tavern. None of these defendants are actually licensees or permittees, but defendant Garvis, as manager, was held by the district court to be "standing in the place" of a licensee. Garvis does not cross-appeal from that ruling, and we therefore treat him as a licensee for purposes of this appeal.

Applying the principles of common-law liability discussed above, we hold that these employees may be held liable under common law for negligence in furnishing liquor to Miller, and such negligence may be based upon violations of statute or ordinance as alleged here, under the authority of *Lewis*. This liability is not preempted by the dram shop act.

IV. *Application to Licensees and Permittees.*

■ As noted earlier, our dram shop act provides a cause of action only when a sale is made to an intoxicated person. Iowa Code § 123.92. The defendants here allege violations of Iowa Code section 123.49(1) and Sioux City Municipal Code section 4.32.180, both of which prohibit sale to intoxicated persons. The dram shop act thus covers the act of these licensees selling to Miller, if the fact-finder determines he was intoxicated. In *Snyder*, 323 N.W.2d at 227, we held the act provided a plaintiff's exclusive remedy, when it applied, and we adhere to that view here. It was not error for the district court to sustain the motion to dismiss insofar as it raised issues of the licensees' common law liability for sale of liquor to an intoxicated person.

In *Snyder*, however, we reserved the decision on whether we would recognize a claim against a licensee or permittee for acts not covered by the dram shop act. *Id.* at 228, n. 2. This is such a case. If a fact-finder concludes the dram shop act is inapplicable here because Miller was not intoxicated at the time of the sale but was a minor, is the licensee liable at common law?

Even under the defendants' theory, it would appear that such claim would be recognized, because the "occurrence" would not be covered by the act. *Lewis* held that the sale of intoxicants to a minor in violation of section 123.47 would give rise to a common-law liability. We do not think it is logical to shield a licensee from application of that rule when a sale is made to a minor, on the ground that if the sale had been made to an intoxicated person, the dram shop act would preempt common-law liability.

We therefore resolve the issue reserved in *Snyder* and conclude that a negligent act, such as sale to a minor, which is not covered by the dram shop act will support a common-law claim against the licensee. To immunize the licensee from *any* liability when a sale is made to a minor would be inconsistent with *Lewis* and would stand the public policy of our liquor control act, as stated by Iowa Code section 123.1, on its head. Accordingly, we hold it was error to dismiss the common-law claims against Mitchell and Garvis insofar as they are

based on sales not covered by the dram shop statute.[1]

## V. The Elements of Damage.

The plaintiffs claim damages for their "grief, mental anguish, remorse and humiliation" resulting from the death of their son. On motion, the court struck this claim, and the plaintiffs contend that this was error. Our statute on wrongful death damages provides for recovery for "the value of services and support as spouse or parent" of the deceased. Iowa Code § 613.15.

In *Iowa-Des Moines National Bank v. Schwerman Trucking Co.*, 288 N.W.2d 198, 204 (Iowa 1980), we drew a distinction between claims for "society, care and attention," on one hand, and those for "grief, mental anguish or suffering" on the other. The former, consistent with our earlier cases, *e.g., Wardlow v. City of Keokuk*, 190 N.W.2d 439, 448 (Iowa 1971), were held to be encompassed as "services" under the statute, while the latter type were excluded. *See generally* W. Prosser, *supra*, § 127, at 907–908.

We conclude these damages are not recoverable under section 613.15; but are they recoverable under the dram shop statute itself?

Section 123.92 provides for a suit by a person "who shall be injured in person or property or means of support ... for all damages actually sustained." Language similar to this was held not to provide damages for "wounded feelings or disgrace" in *Kearney v. Fitzgerald*, 43 Iowa 580, 586 (1876). The general rule appears to be in accord, that claims for mental anguish, disgrace, and loss of companionship are not provided for by dram shop acts couched in terms of injury to person, property, or means of support, as is Iowa's. *See* Annot., 78 A.L.R.3d 1199, 1201–1203 (1977).

The district court was correct in striking the claims for grief, mental anguish, remorse and humiliation. These are not allowable elements of damage under either the survival statute or our dram shop act.

## VI. Exemplary Damages.

The plaintiffs allege that the defendants' actions were "wanton and malicious" and demand punitive damages as well as to all of the defendants. The district court struck the punitive damages claim on the authority of *Nelson v. Restaurants of Iowa, Inc.*, 338 N.W.2d 881 (Iowa 1983). *Nelson* held that, because our dram shop act now provides only for damages "actually" sustained, in contrast to earlier versions of it which had expressly provided for both actual and exemplary damages, exemplary damages were no longer recoverable under it. The district court was therefore correct in striking the claim for exemplary damages against Mitchell, as licensee, insofar as its liability is based on the act.

The general rule concerning punitive or exemplary damages is stated in *Freeman v. Bonnes Trucking, Inc.*, 337 N.W.2d 871, 879–80 (Iowa 1983):

> Punitive damages are justified where a defendant acts maliciously. The malice may be actual (express), such as personal spite, hatred, or ill will, or it may be legal (implied), as where the defendant acts illegally or improperly with wilfull or reckless disregard for another's rights.

(Citations omitted.) And, in *Pogge v. Fullerton Lumber Co.*, 277 N.W.2d 916, 920 (Iowa 1979), we said:

> It is not an essential element of malice [supporting a claim for exemplary damages] that defendant's actual spite or wicked intent be demonstrated: An issue may be made by evidence of legal malice, which may be established by showing wrongful or illegal conduct committed or continued with a willful or reckless disregard of another's rights.

(Citations omitted.)

It is alleged in the present case that the defendants knew Miller was drunk when he

---

1. This portion of the order of dismissal, however, is affirmed by operation of law. See Division VII.

came to the tavern, knew he was a minor, served him liquor knowing he would be likely to drive away in a highpowered car, and did it as a part of the concerted effort to gain the patronage of an underage clientele.

 We must take these allegations, which amount to allegations of legal malice, at face value for purposes of a motion to dismiss. When viewed in that light, the allegations of malice were adequate to withstand a motion to dismiss as to the common-law claim, and we therefore reverse the dismissal of the claims for punitive damages to that extent.

### VII. *Summary.*

(1) The dismissal order is affirmed as to all claims against Merchants Mutual Bonding Company, Merle Kingsbury and Lucille Kingsbury.

(2) The order dismissing all claims for "grief, mental anguish, remorse and humiliation" is affirmed.

(3) The court being equally divided on the issue of the common-law liability of defendant Mitchell, as licensee, for acts falling outside the coverage of the dram shop act, here alleged to be sale of liquor to a minor, the order dismissing the common-law claim against him is affirmed by operation of law. Iowa Code § 684.10.

(4) The order dismissing the common-law claims against the defendant-employees Connie Backman, Lee Quade, and Robert L. Saunders, is reversed.

(5) The order dismissing the claim for punitive damages is affirmed as to defendant Mitchell, licensee. The order dismissing the claim for punitive damages against employees Connie Backman, Lee Quade, and Robert L. Saunders, is reversed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

All justices concur except HARRIS, McGIVERIN, and CARTER, JJ., who dissent.

UHLENHOPP, J., who dissents in part.

WOLLE, J., who takes no part.

UHLENHOPP, Justice (concurring in part, dissenting in part).

I think the majority opinion will come as quite a surprise to the General Assembly. For generations the Assembly has prescribed the civil liability and the ambit of it arising from dramshop operations. Now the majority has opened the entire field: licensees and permittees have strict liability for serving persons who are intoxicated or to the point of intoxication, plus common-law liability for serving intoxicants negligently; and their employees have common-law liability for serving intoxicants negligently.

The issue here is one of preemption— whether by statute the General Assembly preempted the field of tort liability of dramshop personnel. Preemption is basically a question of the intention of the legislative body. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604, *rehearing denied*, 431 U.S. 925, 97 S.Ct. 2201, 53 L.Ed.2d 240 (1977).

Formerly the General Assembly had two dramshop acts, a broad form and a narrow form. Iowa Code §§ 129.2, 123.95 (1971). The broad form in section 129.2 covered the serving of intoxicants by "any person" and it covered serving intoxicants "contrary to the provisions of this title [title VI on alcoholic beverages]". The narrow form in section 123.95 covered serving by "any licensee or permittee" and it covered serving intoxicants to a person "while he is intoxicated" or "to a point where such person is intoxicated".

The General Assembly revised title VI and in the process repealed the broad form and retained the narrow form, which is section 123.92 of the current Code. That section also requires a licensee or permittee to file proof of financial responsibility—an insurance policy or bond. Iowa Code § 123.92 (1983).

By its revision of the dramshop legislation the General Assembly brought about two main results. First, by limiting the

dramshop act to serving by "any licensee or permittee" instead of "any person", the Assembly took dramshop employees out of the dramshop act. For the reasons stated by Justice Larson, however, I cannot believe that the Assembly intended employees should have no liability at all. More likely an employee would have whatever liability exists outside the strict liability of the dramshop act, that is; the damaged person would have to prove negligence on the part of the employee who served the intoxicants. I thus think that employees are *not* liable under the dramshop act but *are* liable for their negligence.

Second, by the same limitation to "any licensee or permittee" instead of "any person", the Assembly expressly kept licensees and permittees under the dramshop act. By so doing the Assembly kept licensees and permittees strictly liable and obligated to post proof of financial responsibility, but it narrowed their liability from serving a person "contrary to the provisions of this title" to serving a person "while he or she is intoxicated" or "to a point where he or she is intoxicated". For the reasons stated by Justice Harris, I believe the dramshop act preempts the tort field as to the expressly-covered licensees and permittees. I also believe that to hold a licensee or permittee under respondeat superior for conduct of an employee, the employee must serve a person who is intoxicated or serve a person to a point of intoxication. Otherwise the statutory condition under which licensees and permittees are made liable would be undercut.

This construction of the act seems to me most likely to reflect legislative intent, based on the present language of the act and the history of this area of law.

HARRIS, Justice (dissenting).

For reasons we now question, we once held there was no liability for a dram shop operator. In answer to that holding, the legislature enacted the dram shop law, carefully setting the limits of its coverage. Only licensees and permittees were made responsible. Our opinions, cited by the majority, spelled out that we recognized the limits fixed in the statute. Now the majority seizes on the fact that we no longer subscribe to the rationale for our former common law theory. On the basis of our change of heart, it pieces around the boundaries of legislation a right of recovery against those whom the legislature excluded.

The legislature did not anchor the dram shop law on our notion, since changed, about proximate cause. Rather, it addressed what it perceived to be an injustice. In setting the parameters of liability it preempted the dram shop field and delineated what claims are to be allowed against those involved in the commercial sale of alcoholic beverages. I think the majority is wrong in reentering the field, no matter how flawed we may now think our reasons were for denial of common-law dram shop liability.

I. The majority ignores what I consider to be a black-letter rule of statutory construction:

[G]eneral and comprehensive legislation, prescribing minutely a course of conduct to be pursued and the parties and things affected, and specifically describing limitations and exceptions, is indicative of a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter.

2A Sands: Sutherland Statutory Construction § 50:05, at 281 (4th ed. 1973). We applied this rule of deference to legislative judgment in dram shop matters in *Snyder v. Davenport,* 323 N.W.2d 225, 227 (Iowa 1982):

[It is a] rule of construction that when a statute gives a right and creates a liability unknown at common law, and at the same time points to a specific method by which that liability can be ascertained and the right assessed, this method must be strictly pursued. [Authorities.]

*See also* 45 Am.Jur.2d *Intoxicating Liquors* § 561 (1969) (citing *Robinson v. Bognanno,* 213 N.W.2d 530 (Iowa 1973)).

**392**

Whatever turn the majority now chooses to take, there is no question that we squarely held:

> "No common-law cause of action exists in Iowa against dram shop operators. *Cowman v. Hansen*, 250 Iowa 358, 92 N.W.2d 682. The legislature, consistent with its police power to regulate the sale and consumption of intoxicating liquors, has seen fit to provide exclusive right of action against vendors of liquor through the statutory scheme of the Dram Shop Acts, prescribing the remedies therein as well."

*Robinson*, 213 N.W.2d at 531 (quoting *Dairyland Insurance Co. v. Mumert*, 212 N.W.2d 436, 441 (Iowa 1973)).

In *Nelson v. Restaurants of Iowa, Inc.*, 338 N.W.2d 881 (Iowa 1983), we pointed out why the exclusiveness of the statutory remedy has special significance in Iowa. Our legislation has become progressively and expressly more restrictive. We traced recent legislative history of the dram shop act. *Id.* at 883–84. *See also Snyder*, 323 N.W.2d at 226–27 (Iowa 1982). That history shows a clear legislative purpose. The enactment of senate file 485, 1963 Iowa Acts chapter 115, section 8 (codified as Iowa Code section 123.95 (1966)), left Iowa with conflicting statutes because the old dram shop act, Iowa Code section 129.2 (1962), had not then been repealed. That section provided that "any person" could be held civilly liable for selling or giving intoxicants to a minor or intoxicated person.

As pointed out in *Nelson*, the conflict was resolved in 1971 when the legislature enacted the "Liquor and Beer Control" act, 1971 Iowa Acts chapter 131. Section 152 of the act expressly repealed old sections 123.95 and 129.2. Significantly, the legislature was faced with a choice of imposing dram shop liability either on "any person" or merely on licensees and permittees. It clearly chose the latter. The dram shop provision of the new act, 1971 Iowa Acts chapter 131, section 92 (codified as Iowa Code section 123.92), retained the language of section 123.95. The phrase "any per-

son" was deliberately rejected. It still seems clear to me that the limitation of those to be held liable under the dram shop act "was not mere inadvertence." *Nelson*, 338 N.W.2d at 884.

It should not be necessary to defend the reason the legislature chose to limit liability to licensees and permittees. No matter how patiently it is explained, I cannot subscribe to the majority's willingness to read the "any person" term back into the statute. The legislature voted it out and I think we should yield to the amended statute.

II. For the same reason, we should also decline to extend common law liability to the agents of a licensee or permittee. Licensees and permittees could otherwise be held liable under common law theories of indemnity or *respondeat superior* through their agents. Such additional liability effectively would vitiate the legislative scheme underlying the dram shop act.

III. In *Cochran v. Lovelace*, 209 N.W.2d 130, 132 (Iowa 1973), we held that Iowa Code section 123.95 (1966) provided no relief against the surety of the licensee or permittee in a dram shop case. I agree with the majority's holding that the claim against the surety was rightly dismissed. I would, however, base the holding on our majority opinion in *Cochran*.

In *Nelson*, 338 N.W.2d at 885, we held punitive damages are not recoverable under the dram shop act. The majority adheres to this holding but allows such a claim under its common law theory. Because I do not believe there should be a common law recovery, I think the trial court was right in dismissing the plaintiffs' claims for punitive damages.

I would affirm.

McGIVERIN and CARTER, JJ., join this dissent.