OLIVE BELL v. AUGUST ZELMER ET AL.

*Intoxicating liquors—Action by wife for injuries resulting from sale—Evidence—Witness—Impeachment.*

1. It has not yet been determined in this State that one who sells or gives liquor *lawfully* to an *adult* person is responsible for his death or for injuries infl cted on account of his intoxication; and in all cases before this Court, where a recovery has been asked for under the statute, the sale was in violation of the statute.

2. A court or jury would not be justified in finding a defendant liable for damages for the consequences of a sale of liquor upon a given day solely upon the testimony of a witness who testifies that he thinks he and the deceased did *not* go into the defendant's saloon on the day named, or get any liquor there, and that he was mistaken in his contrary statement made before the trial, or on a previous trial.

3. A plaintiff cannot ask for a verdict upon the uncorroborated evidence of a witness whom he has himself impeached.

Error to Ionia. (Smith, J.) Argued April 10, 1889. Decided June 7, 1889.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Lemuel Clute,* for appellant.

*Mitchel & McGarry* (*Davis & Nichols,* of counsel), for defendants.

MORSE, J. On the thirtieth day of December, 1885, the defendant August Zelmer was a saloon-keeper in the city of Ionia. Schmoltz and Kennedy were sureties on his bond, the penal sum of which was $3,000.

On that day John Bell, a farmer living in the township of Odessa, in Ionia county, came from his home to the city of Ionia with a team of horses and a buggy.

While there he met a neighbor, Charles McRoberts, with whom he visited several places and drank liquor. About dark he started for home, McRoberts riding with him. They had some difficulty on the road, arising probably from the effect of the liquor they had drank. Finally Bell ordered McRoberts out of his buggy. McRoberts got out and Bell drove on. The next morning Bell's team was discovered near his home. Bell was hanging out of the buggy, dead, his feet being caught in the seat of the buggy, his head touching the ground. It appeared that the team had come some distance with Bell hanging in this way, his head dragging upon the ground.

The plaintiff, his widow, brought suit March 24, 1886, against Zelmer and his bondsmen under the statute (Act No. 259, Laws of 1881, as amended by Act No. 191, Laws of 1883), claiming that Zelmer sold her husband liquor, which contributed to the intoxication that caused his death.

It appears from the record that the first trial of the cause resulted in a verdict for plaintiff, which was afterwards set aside by the circuit judge upon a motion for a new trial.

The cause came on again to be tried in the Ionia circuit

before a jury, on the nineteenth day of December, 1887. Upon the swearing of the first witness, the plaintiff, the counsel for the defendants objected to any testimony being introduced in the case tending to show any liability against the defendants, or any liability against the sureties in the bond, for the following reasons:

"1. Because neither the common law nor statute gives the right of action for the death of a human being under the circumstances in the declaration counted on.

"2. There is no cause of action alleged against the principal in the bond, for the reason that there is no wrong alleged out of which the injury complained of grew or originated. There is no allegation of an illegal sale of liquor, nor that the sale made was not lawful.

"3. There is no liability against the sureties, Schmoltz and Kennedy, alleged in the declaration, because—

"a—The form of the declaration is in trespass on the case.

"b—The sureties are alleged to be guilty of no wrong save only the signing of the bond, which is not unlawful.

"c—Because there is no breach of the conditions of the bond alleged."

This objection was overruled, and the case proceeded.

The only person who gave any evidence tending to show that the husband of plaintiff drank or procured any liquor at the saloon of Zelmer was Charles McRoberts, who, when first placed upon the stand as a witness for the plaintiff, testified as follows:

"I reside in Odessa, where I have lived for sixteen years. I am a farmer. Knew John Bell in his life-time. My farm joins the one he lived on in '85, and where his family now live.

"I was here in Ionia with John Bell on the day previous to his death, in December, '85. I could not say how much I was in his company on that day. I think I met him about 12 o'clock, first. I knew of his drinking liquor in Ionia that day. I know the defendant August Zelmer.

"Q. While in Ionia on that day, did you go into Zelmer's place of business?

"A. That I am not capable of saying. I do not think I did.

"Q. Did you testify in this case once before?

"*A.* Yes, sir.

"*Q.* Do you remember how you testified then?

"*A.* Yes, sir; I do. I think, sir, I was mistaken at that time. I think I was mistaken of the place.

"*Q.* Do you know what place of business Zelmer kept at that time?

"*A.* Yes, sir; I do. He kept a saloon."

He was then examined and cross-examined for a long time by the attorneys for the plaintiff, first one and then the other taking the witness and endeavoring to get from him a positive statement that he and Bell drank in Zelmer's saloon that day, and an admission that he so positively testified on the first trial. The witness hesitated some, and at times was inclined to be evasive in his answers, but he insisted that he was not positive before the first trial, and only meant to testify to the best of his recollection. He admitted that, before the first trial, he pointed out to Mr. Clute, one of plaintiff's attorneys, Zelmer's saloon as one of the places where he thought he got liquor with Bell. He claimed that he was never certain about it, as he had been drinking a good deal on the thirtieth of December, 1885, and that he had been thinking of the matter since, and had come to the conclusion that he was mistaken.

On being asked by Mr. Clute, " Do you know you are mistaken?" he answered:

"No, sir; I don't know positively whether I am mistaken or not. My memory tells me that I might be mistaken, and— and I think that I am mistaken, but—"

"*Mr. Blanchard* [counsel for plaintiff]. I would like to ask you what saloon it was, then.

"*The Court.* Do you know what saloon you were in that day that is on the south side of the street?

"*A.* No, sir; not positive."

It appeared from the testimony of the witness that before the second trial began he went voluntarily to the office of Mr. Clute, plaintiff's counsel, who planted the suit, and told him that he could not swear that he and Bell got liquor in Zelmer's place, as he had become convinced that he was mis-

taken in naming his saloon as one of the places where liquor was obtained.

After the witness had been exhausted by the attorneys on both sides, the court asked him:

"Witness, what do you say now as to whether you were in Zelmer's with Bell, when Bell was there, December 30, 1885?

"*A.* I thought at the time that that was the saloon that I was in.

"*The Court.* I asked you what do you say now?

"*A.* Well, I say that I think I was mistaken."

The witness stated that in the last saloon which he and Bell went into that day Mr. Olmstead, the keeper of a feed-stable, was with him, and drank with them, and that Olmstead only went to one saloon with them that day, and only once into that one.

Olmstead, being sworn, testified that he remembered going, in December, 1885, with the witness McRoberts to Zelmer's saloon to get a drink of liquor, but he thinks no one went with them; that he was not personally acquainted with Mr. Bell.

On the trial the witness McRoberts' attention was called at different times to his testimony on the first trial, and he was asked if he did not then answer as follows to questions then put to him:

"*Q.* Are you sure that you saw Zelmer that day?

"*A.* Yes, sir.

"*Q.* Did you see him in the saloon?

"*A.* Yes, sir."

To which he replied that he did not so testify. He was repeatedly asked if he did not testify positively on the first trial that they went into Zelmer's saloon and obtained liquor, and his uniform answer was that he so testified to the best of his memory; that he thought so then, but now thought he was mistaken.

Thereupon the counsel for the prosecution offered in evi-

dence the stenographer's minutes of his testimony on the first trial, and stated that he offered the same for the following reasons :

"1. To show how the witness swore on the former trial.

"2. Because his failure in memory is, in effect, the same as though he had lost his mind from disease or insanity.

"3. The evidence being between the same parties, involving the same issue, we have a right to submit it to the jury, and let them say whether his memory was correct on the former trial.

"4. The facts clearly indicate that the witness has been tampered with by the defendants, with a view of obstructing the course of justice, and that his claim as to want of memory, as to whether Mr. Bell got liquor in Zelmer's saloon is a mere pretense resorted to in order to protect defendants from a verdict against them."

The offer was rejected by the court.

At the close of the testimony on the part of the plaintiff the defendants demurred to the evidence, and insisted upon a verdict in their favor, for the reason that the evidence failed to make a case against them.

The court took this view of the case, and directed a verdict for the defendants.

Some interesting questions are argued before us, and would arise in this case if a new trial were to be granted.

It is not alleged in the declaration in this suit that the sale of liquor by the defendant Zelmer to the husband of plaintiff was unlawful, and if it should be taken for granted that the testimony of McRoberts established the fact that Bell obtained liquor at Zelmer's, which liquor contributed to his death, there is yet in the record no testimony tending to show that the sale to Bell came under any one of the prohibited sales under the statute. It is not shown that he was a person in the habit of getting intoxicated. He was not a minor, nor an Indian, nor of Indian descent, nor had any one forbidden the sale of liquor to him. The sale to him, as shown by this record, was a perfectly lawful one, if the defendant Zelmer sold any liquor to him.

It has not yet been determined in this State that one who sells or gives liquor *lawfully* to an adult person is responsible for his death or for injuries inflicted on account of his intoxication ; and in all the cases before this Court, where a recovery has been asked under the statute, the sale was an unlawful one, and in violation of the statute.    See *Steele v. Thompson,* 42 Mich. 594 (4 N. W. Rep. 536); *Kehrig v. Peters,* 41 Id. 476 (2 N. W. Rep. 801); *Clinton v. Laning,* 61 Id. 355 (28 N. W. Rep. 125); *Anthony v. Krey,* 70 Id.—— (38 N. W. Rep. 603); *Johnson v. Schultz,* 73 Id.—— (41 N. W. Rep. 865); *Brockway v. Patterson,* 72 Id.—— (40 N. W. Rep. 192); *Flower v. Witkovsky,* 69 Id.—— (37 N. W. Rep. 364); *Friend v. Dunks,* 37 Id. 25, 29, 30; *Kreiter v. Nichols,* 28 Id. 496, 499; *Ganssly v. Perkins,* 30 Id. 492; *Wilson v. Booth,* 57 Id. 249 (23 N. W. Rep. 799); *Thomas v. Dansby,* 74 Id.—— (41 N. W. Rep. 1088); *Larzelere v. Kirchgessner,* 73 Id.—— (41 N. W. Rep. 488).

The statute provides that—

"Every wife * * * who shall be injured in person or property or means of support by any intoxicated person, or by reason of the intoxication of any person, or by reason of the selling, giving, or furnishing any spirituous, intoxicating; fermented, or malt liquors to any person, shall have a right of action in * * * her own name against any person or persons who shall, by selling or giving any intoxicating or malt liquor, have caused or contributed to * * * such injury, and the principal and sureties to the bond hereinbefore mentioned shall be liable severally and jointly with the person or persons so selling, giving, or furnishing any spirituous, intoxicating, or malt liquors as aforesaid. * * * "

This section of the statute, numbered 16, was added to Act No. 259, Laws of 1881, by Act No. 191, Laws of 1883 (How. Stat. §§ 2270-2283). It is therefore a part of said Act No. 259 of the Laws of 1881, the title of which is as follows:

"An act to regulate the sale of spirituous, malt, brewed, fermented, and vinous liquors; to prohibit the sale of such

liquors to minors, to intoxicated persons, and to persons in the habit of getting intoxicated; *to provide a remedy against persons selling liquor to husbands or children in certain cases,* and to repeal all acts or parts of acts inconsistent herewith."

The title of the act does not seem to provide a remedy to the wife against the sale of liquor in *all* cases to her husband, and, being a part of the act which seeks to make the sale lawful to certain persons and unlawful to others, the query naturally arises whether the right of action given by the amended or new section (No. 16) was not intended to apply only to intoxication arising from the sales prohibited by the act.

Though the part of the section giving the right of action would seem to be broad enough to cover all injuries resulting from intoxication, whether or not the liquor was sold or furnished lawfully, still the concluding portion of the section, giving a right of action upon the bond, the form of which is prescribed by the same statute, would appear to restrict the right to cases wherein it is shown that some condition of the bond has been broken.

In *Flower v. Witkovsky, supra,* we held the title to Act No. 259, Laws of 1881, to be within the Constitution, with section 16, Act No. 191, Laws of 1883, included as a part of it.

We then said:

" The main purpose of the act is to regulate and prohibit the sale of liquors, to provide when it shall be lawful and when it shall be unlawful, and what remedies may be resorted to in cases of *unlawful* selling, and injuries resulting from such *unlawful* sales. These things all belong to one primary object, which is the distinguishing of lawful from unlawful sales under the law, and providing penalties and remedies against *unlawful* sales, and the natural consequences resulting therefrom."

Another serious question also would arise. The sureties on

Zelmer's bond, the defendants Schmoltz and Kennedy, obligated themselves that Zelmer should not—

"Directly or indirectly, by himself, his clerk, agent, or servant, at any time, sell, furnish, give, or deliver any spirituous, malt, brewed, fermented, or vinous liquor, or any mixed liquor a part of which is spirituous, malt, brewed, fermented, or vinous, to a minor, nor to any adult person whatever who is at the time intoxicated, nor to any person in the habit of getting intoxicated, nor to any Indian, or to any person of Indian descent, nor to any person whose husband, wife, parent, child, guardian, or employer shall forbid the same, and that he would pay all damages, actual and exemplary, that may be adjudged to any person for injuries inflicted upon them, either in person or property, or means of support, by reason of his selling, furnishing, giving, or delivering any such liquors."

There is no evidence in the record before us to show that Zelmer had, at the time of the commencement of this suit, broken any of the conditions of the bond, as above set forth. Can the sureties in such a case be held to a liability to which they have not obligated themselves,—one not "nominated in the bond?"

In *Anthony v. Krey, supra*, we held that the sureties could be joined with the principal in the bond, because the principal had not kept the covenants of the same as to the selling and furnishing of liquor, as it was alleged in the declaration in that case that he had unlawfully sold or furnished liquor to the husband of the plaintiff, he being at the time of such sale a person in the habit of being intoxicated.

If it should be determined that a person could be held for a lawful sale or furnishing of liquor in case a person, intoxicated in whole or in part by the drinking of such liquor, should injure some one, or some one should be injured by reason of such intoxication, it would still remain to be determined whether the sureties would be liable until the principal was sued and a judgment obtained against him, which he neglected or refused to pay. If the sureties in such case can

be joined with the principal, and made liable before any judgment is obtained against him, the right to sue must arise out of the statute, as such liability cannot be found in the terms of the bond.

But in our view of the case it is not necessary to dispose of these questions, or to ascertain whether or not the action was properly brought in trespass on the case.

We are satisfied that the court committed no error in rejecting the evidence of McRoberts, as taken on the first trial, and that no jury could be authorized to find a verdict against the defendants upon his testimony as given on the last trial.

It certainly would not be proper for a court or jury to find the defendants liable in damages for the consequences of selling liquor to Bell on the thirtieth day of December, 1885, solely upon the testimony of a witness who, when sworn upon the trial, thinks he and Bell did not go into Zelmer's saloon that day, or get any liquor there, and that he was mistaken in his statement before the trial, or on a previous trial, that they did go in there and get liquor. When he is the only witness relied upon to prove the sale of the liquor, and the only one giving any evidence tending to show any such sale, the jury must take his testimony as it is given, and cannot render a verdict upon what he has previously said out of court, or upon a prior trial of the same case.

There was no evidence in this case, outside of the testimony of McRoberts, tending to show that Bell procured any liquor at Zelmer's saloon. The evidence showed three saloons adjoining one another, on the same side of the street, one of the outer ones being Zelmer's.

McRoberts is certain that he went into one of them with Bell, which one he cannot tell, but thinks it was not Zelmer's; thinks that since the first trial he has seen the young man who sold him the liquor in this saloon (Jock Ingalls), who kept or "tended bar" in one of the other saloons; is certain

that he did not see Zelmer in the saloon, and he is acquainted
with him.

Error is assigned because the court would not permit the
plaintiff's counsel to introduce in evidence the testimony of
McRoberts as given upon the first trial of the case.

If it would have been proper, under the circumstances of
this case (which it is not necessary to determine), to introduce
this testimony for the purpose of impeaching the witness,
still its admission for that purpose could not have been of any
benefit to plaintiff. She certainly could not have asked from
the jury a verdict of damages against the defendants upon
the uncorroborated evidence of a witness whom she herself
had impeached, nor could the jury, as before said, have been
authorized to find such a verdict upon the testimony of Mc-
Roberts given upon another trial, and antagonistic to his
evidence on this trial.

It was also claimed in favor of the admission of this testi-
mony that there was evidently a "failure in memory" in this
witness in effect, and that for this reason the plaintiff was
entitled to read in evidence his testimony taken on the former
trial the same as if the witness had lost his mind from disease
or insanity.

But the testimony of McRoberts, as given in the record,
does not show that his memory has failed. His own evidence
is that he has been thinking the matter over since the other
trial, and that he has become satisfied, or is of the opinion,
that he was mistaken on the former trial.

It is also asserted that the facts clearly indicate that the
witness has been tampered with by the defendants with a view
of obstructing the course of justice. We do not think the
record bears out this assertion; but, if it did, it would not
alter the situation as to the admissibility of his testimony
taken on the first trial. The jury could not have rendered a
verdict, as before shown, against the defendants upon evi-
dence not given on the trial, and especially upon the testi-

mony of a witness shown upon the present trial to have been open to corruption and corrupted.

The judgment of the court below must be affirmed, with costs.

SHERWOOD, C. J., and CHAMPLIN and CAMPBELL, JJ., concurred. LONG, J., did not sit.