EUGENÍA PEACOCK v. DANIEL OAKS.

*Liquor traffic—Action by wife—Unlawful sales—Evidence.*

1. There can be no recovery under the statute for injuries caused by the sale or furnishing of liquor to another, unless such sale or furnishing is in violation of law. *Bell v. Zelmer,* 75 Mich. 66.

2. Where, in a suit by a wife to recover damages for injuries sustained by reason of the sale of liquor to her husband, it appears that the defendant sold out his saloon business at a certain date, and that the saloon was thereafter occupied by the vendee, it is error to permit the plaintiff to show the intoxication of her husband after that date, and that he frequented said saloon, unless it is further shown that the defendant contributed to such intoxication by selling or furnishing him liquor.

Error to Osceola. (Judkins, J.) Argued April 16, 1891. Decided May 8, 1891.

Case. Defendant brings error. Reversed. The facts are stated in the opinion.

*S. D. Clay* and *McGarry & Ford,* for appellant.

MORSE, J. The plaintiff sued the defendant in the Osceola circuit court, claiming damages for injuries alleged to have been sustained at the hands of her husband, Thomas H. Peacock, by means of his intoxication, resulting from liquors sold him by the defendant, who kept a saloon in the village of Reed City. She recovered verdict and judgment for $500. The defendant brings error, and files a brief in support of his allegations. The plaintiff presents no brief, and was not represented by counsel on the hearing in this Court.

The plaintiff in her declaration alleges that she was

married to Thomas H. Peacock on the 3d day of November, 1879, and immediately after such marriage came to Reed City, where they have since resided; that Oaks kept a saloon where liquor was sold from November 3, 1879, to May 1, 1889; that for three or four years after her marriage her husband treated her well and kindly, and was sober and industrious, and prospered in his business, which was the running and operating of a planing mill, and sash and door factory and lumber yard; that at the end of this period he began drinking liquor at the saloon of the defendant, spent much of his time there, neglected his business and his family, came home drunk, and abused her; that in October, 1885, her husband attended revival meetings, and, under their influence, reformed, and for five months quit the use of intoxicating liquors entirely, and ceased to visit the saloon of the defendant, who, however, induced him to frequent his saloon again, and he relapsed into his old habits; that he became a person in the habit of becoming intoxicated, and from the 1st day of March, 1886, until the 1st day of May, 1889, visited the saloon of the defendant daily and nightly, and, until, after the legal hour of closing, was permitted to remain therein by the defendant, and to become grossly intoxicated, in which condition he would come home and abuse the plaintiff, ill treating her, and subjecting her to personal violence, and depriving her of her rest and strength in taking care of him; that during this period defendant furnished her husband liquor unlawfully and on Sundays, and, when plaintiff went to such saloon on Sundays to induce her husband to go home with her, she was refused admittance therein by the defendant.

That during the winter of 1888 and 1889 she several times implored defendant not to sell her husband any more liquor, but defendant answered her by cursing

plaintiff, and informing her that he thought her husband knew his own business, and when he had enough; that on the 15th of April, 1889, she served a written notice upon defendant not to sell or furnish her husband any more liquors, to which notice the defendant paid no attention; that her husband went upon a protracted spree, and was intoxicated almost daily and nightly, until May 1, 1889, when he violently abused plaintiff, and "struck, pulled, jerked, and hauled plaintiff about the house, smashed and broke up the household goods, and severely injured and frightened plaintiff, and caused her great bodily and mental suffering."

She avers that, by reason of the liquors so unlawfully furnished by the defendant to her husband, he has had several periods of illness, so that large sums of money had to be expended for medical attendance, care, and nursing, and he was unable to attend to his business, which was neglected and injured in consequence of his intoxication and illness, her health was seriously impaired and broken, and she deprived of the society, aid, and comfort of her husband in bringing up her family, as well of the good example of a sober and industrious husband in her family; that she has suffered great shame, disgrace, mortification, and contumely of being a drunkard's wife; been driven from society and its enjoyments and comforts, and deprived of the society and comfort of friends and relations, and injured and outraged in her feelings beyond expression. She also avers great damage in her means of support, in the loss of her husband's health and her own health, caused by the conduct of her said husband while intoxicated.

The substance only of the declaration is set out. This is done in order properly to discuss the questions raised upon the trial, and the errors alleged in the disposal of them by the trial court.

The testimony was such upon the trial in relation to the prosperity of the husband in his business, and the manner in which he supported his family, that the court instructed the jury that the evidence, taken as a whole, would not fairly justify the claim that the plaintiff's means of support were impaired by his intoxication, and that they could give her no damages on that account, and she was thereby confined in her recovery to damages for the abuse and personal violence, and her mental suffering on account of the mortification and disgrace incident in the case of a wife with a drunken husband.

In stating the elements of damage it is alleged that the court erred in instructing the jury as follows:

"Now, those, gentlemen, on this record and on this issue to-day, are the only elements of actual damages,— the injuries to her person, physical and mental. In addition to this, you have the right to award her what is known as 'exemplary damages,' or, as some of the courts call it, 'smart money,' which is not designed to compensate her particularly, but to punish the defendant for his wrongful acts and conduct, if you believe from the evidence these sales were made wantonly, made wickedly, made purposely, knowing the consequences resulting therefrom. If a man sells liquor to me knowing that I have a wife and family depending upon me, and I become intoxicated, and he carries that thing on knowingly, knowing the consequences, against the wife's protest or remonstrances, and makes the sales, and damages her thereby, she is entitled, of course, to actual damages; and, in addition to that amount, she is entitled to recover whatever you think would be a fair amount as a punishment to the man who furnished the liquor."

And in further charging them, in another part of his instructions, that in addition to her actual damages she was entitled to such punitive or exemplary damages as would be an example to other men in like circumstances, *and punish him for his misdeeds and misconduct in the premises,* "*and put them altogether in one sum, and render*

*a verdict for that amount,"* in case they found that plaint-
iff requested defendant to sell no more liquor to her hus-
band, and, notwithstanding such request, he went on, and
sold in violation of her rights, and despite such request.

The complaint is that, although exemplary damages are
expressly allowed by the statute, they are permitted
because of wrong done willfully to her, and not for
wrong done without reference to her; that they cannot be
allowed when there is no malice or willfulness in the act
complained of, and cannot be given as a punishment to
the wrong-doer in addition to the actual damages suf-
fered by plaintiff; that this charge was equivalent to
imposing "smart money" upon the defendant in violation
of the rule as laid down in this State in *Stilson v. Gibbs,*
53 Mich. 280; *Wilson v. Bowen,* 64 Id. 133.

These cases do not apply here. We held in *Larzelere
v. Kirchgessner,* 73 Mich. 276, 283, that the "exemplary
damages" mentioned in the statute were punitory in their
character, and designed to punish the defendant for some
positive wrong he had willfully inflicted upon or caused
the plaintiff, or for some very gross neglect of her rights
in furnishing liquor to her husband at the time alleged
in her declaration.

It is also insisted that the following request, presented
by the defendant, should have been given:

"If you should find from the evidence that the sale or
delivery of liquor to Mr. Peacock by defendant caused
him to be drunk or intoxicated, and, as the result of
such intoxication, he injured the plaintiff, even then she
cannot recover unless you find such sale to have been
unlawful, and made in violation of law."

There was testimony on the part of defendant tending
to show that Mr. Peacock was not a man in the habit of
becoming intoxicated, and that defendant never sold him
liquor while he was intoxicated, or on Sundays, or at

other unlawful hours. Defendant denied that plaintiff ever asked him not to furnish liquor to her husband, or protested against it, until the time of the serving of the written notice, April 15, 1889. He testified that after that time he sold or furnished no liquor to Peacock, and that he went out of the saloon business on the 30th day of April, 1889. I am of the opinion, for reasons stated in *Bell v. Zelmer*, 75 Mich. 66, that there can be no recovery under the statute for injuries caused by the sale or furnishing of liquor to another, unless such sale or furnishing is in violation of law. There was therefore error in the refusal of this request.

The defendant sold out his business, and another person occupied the same place of business from the 1st of May, 1889, to the end of that year. Complaint is justly made, we think, that the plaintiff was permitted to show the intoxication of her husband after May 1, 1889, and that he frequented this saloon during the year 1889, when there was no testimony tending to show that, after the defendant went out of business, he had anything to do with this saloon or furnished any liquor to plaintiff's husband. The intoxication of plaintiff's husband should have been confined to the period in which the defendant kept the saloon, unless it could further be shown that defendant contributed to such intoxication by selling or furnishing him liquor.

For the errors noted the judgment must be reversed, with costs of this Court to defendant.

The other Justices concurred.