## MILLROSS v PLUM HOLLOW GOLF CLUB

Docket No. 77710. Argued November 13, 1986 (Calendar No. 16).
Decided October 6, 1987.

Virginia M. Millross, for herself, as next friend of Michael L.
Millross, John E. Millross, and Edward B. Millross, and as
personal representative of the estate of James E. Millross,
deceased, brought an action in the Oakland Circuit Court
against Plum Hollow Country Club, alleging negligence in the
supervision of and failure to provide alternative transportation
for an employee who had become intoxicated at a job-related
dinner and thereafter was involved in an automobile accident
which caused the death of plaintiff's decedent. The court, Alice
L. Gilbert, J., granted summary judgment for the defendant,
finding that there was no common-law duty to provide trans-
portation to and from the employment premises and that the
plaintiff's negligence claim based on the dispensing of an alco-
holic beverage was preëmpted by the exclusive remedy provi-
sion of the dramshop act. The Court of Appeals, R. M. MAHER,
P.J., and BRONSON and D. F. WALSH, JJ., reversed, holding that
the claims of improper supervision and failure to provide
alternate transportation are recognized at common law and are
not precluded under the dramshop act (Docket No. 80483). The
defendant appeals.

In an opinion by Justice BOYLE, joined by Chief Justice RILEY
and Justices BRICKLEY and CAVANAGH, the Supreme Court *held:*

The dramshop act provides the exclusive remedy against
liquor licensees for injuries caused by conduct arising out of the
selling, giving, or furnishing of intoxicating beverages. How-
ever, common-law claims not based on facts related to such
conduct are not excluded under the act. In determining
whether a common-law claim has been validly pled, reference
must be made to the common-law obligation which would
expose the defendant to liability.

1. The dramshop act was intended to provide a new remedy

REFERENCES

Am Jur 2d, Intoxicating Liquors §§ 561 *et seq.*

Common-law right of action for damage sustained by plaintiff in
consequence of sale or gift of intoxicating liquor or habit-forming
drug to another. 97 ALR3d 528.

for injuries caused by an intoxicated person by establishing a new and particular right of recovery against the bar owner who sold intoxicating liquor to the visibly intoxicated person and against the principal and sureties under a bond required of the liquor licensee under the act—problems not adequately addressed at common law. The act also was intended to be the exclusive remedy against the liquor licensee for damages arising out of the selling, giving, or furnishing of intoxicating liquor. Generally, where a statute creates a new right and prescribes a particular remedy, the remedy is exclusive and must be strictly construed. The principle is particularly applicable to the dramshop act.

2. Licensees remain liable, however, for breach of independent common-law duties. Claims that are subject to the exclusive remedy provision are those that arise out of the unlawful or negligent sale, giving away, or furnishing of intoxicants. While the word "unlawful" qualifies a plaintiff's right to recovery under the act, that aspect of the conduct does not determine whether the act applies. It is not the "unlawful" aspect of the conduct which determines whether the exclusive remedy provision of the act should be invoked. Rather, it is the underlying conduct that must be analyzed. Negligence claims that arise out of conduct other than the furnishing, selling, or giving away of intoxicants and which are independently recognized at common law are neither abrogated nor controlled by the dramshop act.

3. In this case, the plaintiff failed to plead a valid cause of action. The common-law duty to supervise an employee does not apply under the circumstances presented. Because the only duty alleged was that of the defendant not to furnish intoxicating beverages to its employee, the dramshop act provides the plaintiff's exclusive remedy. Negligence in the furnishing of alcohol to an able-bodied person was not a tort at common law, and an allegation that the person was tired or was required to attend a banquet does not alter that conclusion.

Reversed and remanded.

Justice LEVIN, concurring, agreed that the complaint did not state a claim for breach of an independent common-law duty, but stated that while the plaintiff's claim is based on the black letter language of § 317 of the Restatement of Torts, 2d, that language, when read in the light of the case law underlying its promulgation, does not support the claim. Rather, it speaks only of the exercise of reasonable care by an employer to control the conduct of an employee upon the premises of the

employer or other premises that the employee is privileged to enter only as an employee. In this case, the employer's conduct is not conduct that heretofore has been thought there is a duty to control; the actions of the employee which were alleged to have caused the accident occurred off the employer's premises on a public highway.

Justice ARCHER, dissenting, stated that *Romeo v Van Otterloo,* 117 Mich App 333 (1982), should not be overruled because its facts are sufficiently different to be distinguished from this case. The case should be remanded to the trial court to permit the plaintiff to amend her complaint to allege that the employer knew or should have known that its employee could not have been trusted with the responsibility given him.

Justice GRIFFIN took no part in the decision of this case.

146 Mich App 680; 381 NW2d 786 (1985) reversed.

*Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982), overruled.

1. INTOXICATING LIQUORS — DRAMSHOP ACT — EXCLUSIVE REMEDY — COMMON LAW.

   The dramshop act provides the exclusive remedy against liquor licensees for injuries caused by conduct arising out of the selling, giving, or furnishing of intoxicating beverages; however, common-law claims not based on facts related to such conduct are not excluded under the act; in determining whether a common-law claim has been validly pled, reference must be made to the common-law obligation which would expose the defendant to liability (MCL 436.22[11]; MSA 18.993[11]).

2. INTOXICATING LIQUORS — DRAMSHOP ACT — EXCLUSIVE REMEDY — NEGLIGENCE.

   Claims subject to the exclusive remedy provision of the dramshop act are those that arise out of the unlawful or negligent sale, giving away, or furnishing of intoxicants; however, while the word "unlawful" qualifies a plaintiff's right to recovery, that aspect of the conduct does not determine whether the act applies or whether the exclusive remedy provision should be invoked; rather, it is the underlying conduct that must be analyzed, and negligence claims that arise out of conduct other than the furnishing, selling, or giving away of intoxicants and which are independently recognized at common law are neither abrogated nor controlled by the act (MCL 436.22[11]; MSA 18.993[11]).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Kathleen L. Bogas*), for the plaintiffs.

*Kohl, Secrest, Wardle, Lynch, Clark & Hampton* (by *Roger F. Wardle* and *Timothy F. Casey*) for the defendant.

BOYLE, J. The issue presented by this case is whether the exclusive remedy of the dramshop act bars plaintiff's claim against defendant for the negligent supervision of an employee. We hold that plaintiff's negligence claim which arose out of the selling, giving, or furnishing of alcoholic liquor by a liquor licensee is preëmpted by the exclusive remedy of the dramshop act. We further hold that the plaintiff has failed to assert a valid cause of action on the basis of negligent supervision of an employee and failure to provide alternative transportation. The decision of the Court of Appeals is therefore reversed and remanded for proceedings consistent with this opinion.

### I. FACTS

The Court of Appeals sets forth the facts:

At approximately 11:19 P.M. on June 22, 1981, James Edgar Millross was fatally injured when he was struck by an automobile operated by defendant Daniel Tomakowski. A few minutes before the collision, Millross had been traveling north on Lahser Road. Near the intersection of Ten Mile Road and Lahser in Southfield, Millross witnessed an automobile accident. He pulled his vehicle over to the side of the road and went to offer aid to one of the persons involved in the accident, 19-year-old Suzanne Waffle. Tomakowski, who was proceeding north on Lahser toward Ten Mile Road, did not see Miss Waffle's car and collided with her vehicle, thereby injuring Millross.

Tomakowski was the "caddie master" at defendant Plum Hollow Golf Club. After putting in a full day's work as caddie master, Tomakowski had attended the Evans Scholarship Foundation dinner at Plum Hollow. Tomakowski's attendance at the dinner was a part of his job responsibilities. Cocktails had been served by Plum Hollow personnel to Tomakowski and the other guests prior to the dinner. The accident with Millross occurred when Tomakowski was on his way home from the dinner. [146 Mich App 680, 682-683; 381 NW2d 786 (1985).]

Plaintiff, Virginia Millross, widow of the deceased, filed her original complaint in Oakland Circuit Court in July, 1981. The complaint was amended several times between 1981 and 1984. Count II alleged that defendant Plum Hollow was liable to plaintiff pursuant to the dramshop act, MCL 436.22 et seq.; MSA 18.993 et seq., for injuries sustained as a result of Tomakowski's collision with Millross. Count IV alleged that Plum Hollow was liable for Tomakowski's negligent driving by reason of the doctrine of respondeat superior and by its failure to properly supervise Tomakowski or provide him with an alternate means of transportation home.

The dramshop claim against Plum Hollow in count II was resolved and a consent judgment was entered in the amount of $591,500. Paragraph 10 of count IV alleging liability on the basis of respondeat superior was stricken. None of these actions are on appeal before this Court.

The subject of this appeal is the grant of summary disposition for failure to state a claim upon which relief could be granted in favor of Plum Hollow on the negligence claim alleged in count IV. GCR 1963, 117.2(1), now MCR 2.116(C)(8). The trial court granted defendant summary disposition

finding that (1) there is no common-law duty of an employer to provide transportation to and from the employment premises, and (2) plaintiff's negligence claim was based upon the dispensing of an alcoholic beverage and was therefore preëmpted by the exclusive remedy of the dramshop act.

The Court of Appeals reversed the grant of summary disposition on the basis that plaintiff's claim for improper supervision or failure to provide alternate transportation is a recognized common-law claim which is not precluded by the dramshop act. We granted leave to appeal. 425 Mich 852 (1986).

## II. THE EXCLUSIVE REMEDY OF THE DRAMSHOP ACT

Whether or not a statutory scheme preëmpts the common law on a subject is a matter of legislative intent. *Jones v Rath Packing Co,* 430 US 519; 97 S Ct 1305; 51 L Ed 2d 604 (1977), reh den 431 US 925 (1977). In general, where comprehensive legislation prescribes in detail a course of conduct to pursue and the parties and things affected, and designates specific limitations and exceptions, the Legislature will be found to have intended that the statute supersede and replace the common law dealing with the subject matter. 2A Sands, Sutherland Statutory Construction (4th ed), § 50.05, pp 440-441.

At common law, negligence in the sale or furnishing of intoxicating liquor to an ordinary ablebodied person was not a tort even though a result of intoxication was injury to the intoxicated person or others. *Manuel v Weitzman,* 386 Mich 157, 163; 191 NW2d 474 (1971). The reason for this rule was that it was the drinking of the liquor, rather than the furnishing of it, which was deemed the proximate cause of the injury. *Longstreth v Gen-*

*sel,* 423 Mich 675, 684; 377 NW2d 804 (1985). Dramshop acts were intended to fill the void that existed at common law. *Id.*

In Michigan, by statute, a "wife, husband, child, parent, guardian, or other person" injured by "a visibly intoxicated person" by reason of the unlawful sale or furnishing of intoxicants to such person has a cause of action against the tavern owner where the sale of intoxicating liquor is proven to be a proximate cause of the injury. MCL 436.22(5); MSA 18.993(5).

This Court has recognized that by enacting the dramshop act the Legislature created a new remedy for a new and particular right. *Browder v Int'l Fidelity Ins Co,* 413 Mich 603, 612; 321 NW2d 668 (1982). The new remedy is not against the intoxicated person who causes an actual injury, but against the bar owner who sells intoxicating liquor to a minor or a visibly intoxicated person and against the principal and sureties on the bond which the licensee is required to procure under the act. *Browder, supra.*

As a general principle of law, where a statute creates a new right and prescribes a particular remedy, the remedy is exclusive and must be strictly construed. *Holland v Eaton,* 373 Mich 34; 127 NW2d 892 (1964), overruled on other grounds 394 Mich 179; 229 NW2d 332 (1975). See also *Thurston v Prentiss,* 1 Mich 193 (1849); *In re Quinney Estate,* 287 Mich 329; 283 NW 599 (1939). Application of the foregoing principle is particularly appropriate here because the dramshop act appears as a self-contained measure with the new remedy and liability under it carefully balanced in a fair and reasonable manner. In *Browder, supra,* p 614, while discussing the exclusive nature of the remedy and period of limitations in the dramshop act, this Court observed the following:

On the one hand, the injured party is protected by a new and non-common-law remedy against a person not otherwise liable, the bar owner. In addition, the bar owner has to be bonded, and both the bond principal and sureties are liable, the sureties to the extent of the bond. This reasonably assures the plaintiff of recovery against a financially responsible person or persons. On the other hand, the bar owner and those liable on the bond, who themselves did not commit, and may not have been aware of the commission of, the tort, are protected from stale claims which they might find particularly difficult to investigate.

Moreover, the Legislature has demonstrated a clear propensity to consider and reconsider the provisions of the dramshop act to keep it internally balanced.[1] Therefore, this Court has found that the Legislature intended the dramshop act to

---

[1] As observed in *Browder, supra,* 614-615:

[T]he Legislature has carefully considered and reconsidered the dramshop act to keep it internally balanced. As we have seen, the first adjustment was to add a specific two-year period of limitations where none had existed before. Compare 1958 PA 152, § 22(2) *with* 1933 [Ex Sess] PA 8, § 22 [1948 CL 436.22(2); MSA 18.993(2)]. Then the Legislature enacted a provision requiring that the bond automatically continue from year to year unless the Liquor Control Commission is given ten days' written notice by the surety of its intent to cancel the bond. 1961 PA 224. In 1972, several changes were made. Originally, the act provided for exemplary damages, 1933 [Ex Sess] PA 8, § 22, but this apparently tilted the act too far in favor of the claimant, so the Legislature modified the act to provide only for actual damages. The requirement of proximate causation was specifically added as was the provision giving the principal and surety all factual defenses which the intoxicated person or minor possessed. Finally the intricate balance was kept by requiring the plaintiff to name and maintain the intoxicated person who actually committed the injury as a defendant. 1972 PA 196, § 22(2). This, of course, is to avoid possible collusion between the plaintiff and the one who caused the injury. Cf. *Salas v Clements,* 399 Mich 103, 110; 247 NW2d 889 (1976). In short, the Legislature has carefully created a self-contained package which has its own built-in checks and balances, among which are included a specified cause of action and period of limitations.

be a complete and self-contained solution to a problem not adequately addressed at common law and the exclusive remedy for any action arising under "dramshop-related facts."[2] *Browder, supra,* p 616. Indeed, the Legislature has amended the act to expressly codify this intent in 1986 PA 176, which provides in pertinent part, "This section provides the exclusive remedy for money damages against a licensee arising out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.22(11); MSA 18.993(11).

Plaintiff contends, however, that notwithstanding the exclusive remedy nature of the dramshop act, Michigan courts have long recognized that liquor licensees remain liable for breach of independent common-law duties. We agree. In *Manuel v Weitzman, supra,* 164-165, quoting *De Villez v Schifano,* 23 Mich App 72, 77; 178 NW2d 147 (1970), this Court stated:

---

Further significant refinements were made in 1986 PA 176. They include a notice requirement for all potential defendants in a dramshop action, § 22(5); a rebuttable presumption that only the last retail licensee is liable under the act, § 22(9); denial of recovery under the act to members of the alleged intoxicated person's family, § 22(10); and a requirement that liquor licensees file proof of financial responsibility to satisfy obligations under the act, § 22a(2).

[2] A limited survey of other jurisdictions indicates that other courts have dealt with the exclusive remedy question differently according to the language of the statute and the common law developing at the time. See *Zamiar v Linderman,* 132 Ill App 3d 886; 478 NE2d 534 (1985) (dramshop act is exclusive remedy against suppliers); *Haafke v Mitchell,* 347 NW2d 381 (Iowa, 1984) (dramshop act found exclusive remedy against licensees, but not employees of licensees, since the latter was not named in the act); *Meany v Newell,* 367 NW2d 472 (Minn, 1985) (civil damage act preëmpts field of civil liability for furnishing of liquor). But see *Largo Corp v Crespin,* 727 P2d 1098 (Colo, 1986) (narrowly drawn dramshop act not exclusive remedy); *Kowal v Hofner,* 181 Conn 355; 436 A2d 1 (1980) (dramshop act not exclusive remedy, but no common-law claim exists for negligence in serving intoxicating person); *Settlemyer v Wilmington Veterans Post No 49,* 11 Ohio St 3d 123; 464 NE2d 521 (1984) (dramshop act not exclusive remedy); *Langle v Kurkul,* 146 Vt 513; 510 A2d 1301 (1986) (dramshop act does not preëmpt a remedy under common law).

It is noted that tort reform legislation may have affected the decisions in some of these states.

We hold that the dramshop act affords the exclusive remedy for injuries arising out of an *unlawful sale, giving away, or furnishing of intoxicants.* *King v Partridge* (1968), 9 Mich App 540, 543 [157 NW2d 417]. However, the act does not control and it does not abrogate actions arising out of unlawful or negligent conduct of a tavern owner other than *selling, giving away, or furnishing of intoxicants,* provided the unlawful or negligent conduct is recognized as a lawful basis for a cause of action in the common law. [Emphasis supplied.]

*Manuel* sets forth a two-part analysis for determining what claims are proscribed by the exclusive remedy provision.

(1) Does the claim against "the tavern owner" arise out of an unlawful sale, giving away, or furnishing of intoxicants? If so, the dramshop act is the exclusive remedy.

(2) If the claim arises out of conduct other than selling, giving away, or furnishing of intoxicants, does the common law recognize a cause of action for the negligent conduct? If so, then the dramshop act neither abrogates nor controls the common-law action. If not, there is no independent common-law claim.

Applying this test to the facts of this case, we find that while it is logically symmetrical to posit that only "unlawful" conduct comes within the dramshop act and other conduct related to furnishing, selling, or giving away by a dramshop owner may state a common-law negligence claim, such a construct founders on the fact that there was no common-law action for negligence in the furnishing of alcohol to an able-bodied person. Stated otherwise, as we said in *Manuel,* the dramshop act does not abrogate or control actions arising out of unlawful or negligent conduct of a tavern owner other than selling, giving away, or furnishing of

intoxicants, *provided* the unlawful or negligent conduct is recognized as a lawful basis for a cause of action in the common law.

Second, a finding of common-law negligence on the basis of these allegations would do obvious violence to the exclusive remedy provision of the dramshop act as it would permit circumvention of the provision of the act in any instance where the factfinder concluded that at the moment of serving, the imbiber was not yet visibly intoxicated. It would also allow circumvention of provisions peculiar to the act such as the two-year period of limitations and the name and retain provision, which safeguard the careful balance established by the Legislature between the new right and new liability under the act. Cf. *Jones v Bourrie,* 369 Mich 473; 120 NW2d 236 (1963).

Third, the implication of the statement in *Manuel* that the liability provisions of the dramshop act "preëmpt any common-law action for negligent sale" is that the exclusive remedy provision bars a remedy for negligent sale or furnishing. See *id.,* p 164.

Finally, legislative history[3] indicates that the

_____

[3] Use of the qualifier "unlawful" first appeared in the civil-damage provision of the dramshop act in 1917. 1917 PA 338, § 47. Until that time, the act provided recovery for "every wife, child, parent, guardian, husband, or other person, who shall be injured in person, property, means of support, or otherwise, by *any* intoxicated person, or by reason of the intoxication of *any* person . . . ." 1871 PA 196, § 2. Faced with a claim that the act provided recovery for injuries resulting from a "lawful" sale, this Court held, notwithstanding the broad language of the statute, that there could be no recovery under the statute unless the sale was in violation of the law. *Peacock v Oaks,* 85 Mich 578, 583; 48 NW 1082 (1891). In 1887, the statutory definition of unlawful sale had been amended to reflect the exact language of the bond conditions. 1887 PA 313, §§ 7, 13. Therefore, this was considered the only logical view in light of the provision of the statute giving a right of action on the bond, the form of which was statutorily prescribed and which appeared to limit liability to those cases where it was shown that some condition of the bond was broken. *Bell v Zelmer,* 75 Mich 66, 73; 42 NW 606 (1889). The amendment in 1917

word "unlawful" in the act qualifies the plaintiff's right to recovery under the act. It does not determine, however, whether the dramshop act is applicable. Indeed, the Legislature has recently mandated that the dramshop act is the exclusive remedy for damages against licensees arising "out of the selling, giving, or furnishing of alcoholic liquor." MCL 436.22(11); MSA 18.993(11). The word "unlawful" is conspicuously missing from this provision. In short, it is not the "unlawful" aspect of the conduct which determines whether the exclusive remedy of the dramshop act shall be invoked. Rather, it is the underlying conduct that must be analyzed.

In conclusion, therefore, the categories of claims that are subject to the exclusive remedy provision are those that allege breach of a duty made unlawful by the act and those that allege breach of a duty which would have constituted negligent furnishing, selling, or giving away of liquor if such a

which limited recovery to damages incurred "by reason of the unlawful selling," 1917 PA 338, § 47, codified judicial interpretation which had tailored recovery under the act to sales which were in violation of the law.

In 1937, four years after the repeal of prohibition, the dramshop act began to take on the form we see today. 1937 PA 281, § 22. Although the civil-damage provision continued to refer to only "unlawful" sales, the congruence between the statutory definition of unlawful and the bond conditions facilitated construction of when recovery would be permitted. *Id.*, § 33. 1933 (Ex Sess) PA 8, § 29.

In 1972, recovery under the dramshop act and liability under the bond provision was limited to cases involving sales to "visibly" intoxicated persons. 1972 PA 196, § 1. A subsection of the act and bond condition forbidding sales to minors existed, but this term was not reflected in the civil-damage provision of the act.

In 1986, recovery for damages incurred as a result of a sale to minors was expressly added, securing uniformity between the civil-damage provision and statutory prohibitions imposed on licensees under the act. The bond requirement for a retail licensee was eliminated, 1980 PA 351, § 1, as well as a right of action on the bond, 1986 PA 176. Proof of financial security in the form of cash, unencumbered securities, insurance, or bond is now required as security for liability under the dramshop act. *Id.*

claim was recognized at common law. Cf. *Kowal v Hofher,* 181 Conn 355; 436 A2d 1 (1980).

### III. APPLICATION OF THESE PRINCIPLES IN *MANUEL v WEITZMAN* AND *BROWDER v INT'L FIDELITY*

In *Manuel, supra,* both a cause of action for dramshop liability and a cause of action for negligence in failing to maintain safe premises for business invitees arose out of the same incident. This Court found that the following allegations would support the plaintiff's negligence claim if proven: the defendant knew that the intoxicated person had engaged in a fight in a bar at some time before the attack, the bartenders on duty did not take sufficient measures to eject him after he became obstreperous and disruptive, and, after the attack, the bartenders did not act immediately to protect the plaintiff from injury.

These allegations indicate that the negligence claim was not predicated on the defendant's furnishing of intoxicating liquor. The claim, therefore, did not fall within the common-law rule barring a claim for the furnishing of liquor. Rather, the cause of action was predicated on the responsibility to protect a business invitee. The duty to exercise reasonable care in the supervision of his patrons' conduct upon the proprietor's premises arose from the relation existing between plaintiff and the defendant, Prosser & Keeton, Torts (5th ed), § 33, and was unaffected by the common-law rule regardless of when, where, and how the patron became intoxicated. See *Nolan v Morelli,* 154 Conn 432; 226 A2d 383 (1967). Therefore, in *Manuel,* the plaintiff's negligence claim existed independent of the conduct which was subject to

the dramshop act and was allowed to coexist with a dramshop claim.[4]

In *Browder v Int'l Fidelity Ins Co, supra,* after filing a dramshop action against the Grapevine Lounge, the plaintiff filed suit against the Fidelity Insurance Company as surety on the bond issued to the lounge. However, the plaintiff's claim against the insurance company was barred by the two-year period of limitation provided in the dramshop act.

The plaintiff sought to circumvent the two-year period of limitation by insisting that her cause of action was founded in contract on a third-party beneficiary theory and was therefore controlled by a six-year period of limitation. See MCL 600.5807(8), 600.5813; MSA 27A.5807(8), 27A.5813. This Court disagreed, finding that the Legislature intended the tort action remedy under the dramshop act to be the exclusive remedy for " 'any action' arising under dramshop-related facts . . . ." *Id.,* 616. Therefore, accelerated judgment in favor of the defendant on that claim was appropriate. See also *Jones v Bourrie, supra.*

These precedents illustrate both that preëxisting independent common-law claims have not been abrogated by the dramshop act and that the dramshop act abrogates only those common-law claims against a liquor licensee having for a basis breach of a duty which is "subject to" the dramshop act

---

[4] But see *Kangas v Suchorski,* 372 Mich 396; 126 NW2d 803 (1964), where a plaintiff who had contributed to the intoxication of the tortfeasor was barred from bringing a common-law claim for the negligent maintenance of business premises against the proprietor who sold the liquor on the basis that the plaintiff's exclusive remedy was based upon the dramshop act. *Kangas* is an incorrect construction of the dramshop act insofar as it purported to hold that "the liability provisions of the dramshop act not only preëmpt any common-law action for negligent sale, but also preëmpt a common-law action for 'negligence in failing to maintain a suitable place and safe conditions for business invitees.' " *Manuel v Weitzman, supra,* 161-164.

and only as to those parties who fall within the act's purview. Such a construction does not confer on liquor retailers an additional protection not accorded to others, nor does it lessen the common-law duties owed by a liquor licensee to the general public. The act embodies a new remedy which did not otherwise exist and therefore imposes a duty and potential liability which thus far is peculiar to liquor licensees.[5] *Rowan v Southland Corp,* 90 Mich App 61, 68; 282 NW2d 243 (1979); see also *Guitar v Bieniek,* 402 Mich 152; 262 NW2d 9 (1978). Moreover, the Legislature has created this remedy through a comprehensive and thoroughly considered scheme which carefully balances each party's rights and liabilities.

Given the careful consideration the Legislature has given the act, its purposes and intendments, we hold that the remedy provided in the dramshop act is the exclusive remedy for injuries caused by a licensee's negligence in selling, giving, or furnishing alcoholic liquor.

## IV. HAS PLAINTIFF PLED A VALID INDEPENDENT CAUSE OF ACTION?

As we stated earlier, the dramshop act does not control or abrogate actions arising out of conduct of a tavern owner other than the selling, giving, or furnishing of intoxicants, provided that the alleged unlawful or negligent conduct is in breach of a

---

[5] But compare *Longstreth v Gensel, supra* (a non-liquor licensee can be sued in tort for injuries caused by serving alcoholic beverages to a person under twenty-one years of age. MCL 436.33; MSA 18.1004). Compare also *Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982) (recognizing an action in negligence for an employer's failure to properly supervise an employee who was serving as a host at a party where intoxicated beverages were furnished); *Klotz v Persenaire,* 138 Mich App 638, 642-643; 360 NW2d 255 (1984) (recognizing a negligent-entrustment claim for allowing an intoxicated person to take a boat out on the lake when the defendant knew or should have known of his intoxicated state).

duty recognized as a basis for a cause of action at the common law. Plaintiff claims that she has pled a recognized common-law cause of action on the basis of Plum Hollow's breach of its duties: to provide proper supervision of its employees at the dinner event; to provide alternate transportation for the employee, Tomakowski, who had been working for thirteen hours prior to the dinner event and who had consumed alcoholic beverages while attending the dinner event, especially where there was no available public transportation; and not to serve and allow Tomakowski to be served "excessive" amounts of alcoholic beverages rendering him "intoxicated" and unable to safely drive from the work situation. This claim requires examination of the nature of the duty allegedly owed by one party to another, *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977). In doing so, we focus, not on the particular standard of care, that is, "[t]he reasonableness of the risk of harm," *id.,* 433, created by the particular conduct, but rather on whether the situation is one in which there is a recognized duty at common law, that is, "whether the actor was under any obligation to exercise reasonable care under the circumstances . . . ." *Lowe v Estate Motors,* 428 Mich 439, 463; 410 NW2d 706 (1987).

Emphasizing the distinction between unlawful conduct under the dramshop act and negligent conduct, the plaintiff claims she has alleged a common-law claim of negligence on the basis of the employer's duty to control the actions of the employee as set forth in § 317 of the Restatement of Torts, 2d.[6]

---

[6] A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or

*Manuel* and the Restatement suggest that a common-law claim might be recognized where an employee became intoxicated and harmed a third person while still on the employer's premises, or the employer had permitted an intoxicated employee to use the employer's vehicle to leave the premises. However, "the master as such is under no peculiar duty to control the conduct of his servant while he is outside the master's premises, unless the servant is at the time using a chattel entrusted to him as servant." § 317, comment b. See *Meany v Newell,* 367 NW2d 472 (Minn, 1985). Plaintiff's claims of improper supervision and failure to provide alternate transportation must be read to assert not the breach of an independent duty to third parties, but rather to allege a negligent failure to prevent intoxication of an employee or negligence in permitting an employee who is tired and has been drinking, but is not visibly intoxicated, from driving his own vehicle.

These claims are not based on breach of duty cognizable at common-law which is independent of the conduct involving the furnishing of intoxicants to Tomakowski. If Michigan recognized a common-law claim against Plum Hollow as a dramshop owner, it would be for the negligence in serving Tomakowski intoxicants when he was tired and

from so conducting himself as to create an unreasonable risk of bodily harm to them, if

(a) the servant

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or

(ii) is using a chattel of the master, and

(b) the master

(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control. [2 Restatement Torts, 2d, § 317, p 125. See also 1 Restatement Agency, 2d, § 213, p 458.]

where it was reasonably foreseeable that he would drive his own vehicle. This is the same conduct which would form the basis of plaintiff's common-law claim against Plum Hollow as an employer, if the claim were recognized in this jurisdiction. Cf. *Dickinson v Edwards,* 105 Wash 2d 457; 716 P2d 814 (1986).

The dramshop act is plaintiff's exclusive remedy for the furnishing of alcoholic beverages, and this preclusion extends not just to those allegations that would be "unlawful" under the dramshop act, but to allegations that the employer was negligent in furnishing alcohol to a tired but otherwise able-bodied employee. Negligence in the furnishing of alcohol to an able-bodied person was not a tort at the common law. Neither alleging that the person was tired nor that he was required to attend the banquet alters this conclusion.

The conclusion that plaintiff has not established a common-law claim requires consideration of the cause of action recognized in *Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982). In *Romeo,* the defendant was an accounting firm which required some of its employees to host a party for one of its clients. While fulfilling that duty, one of the employees drank alcoholic beverages. That employee caused an accident while attempting to drive home, killing the plaintiff's husband. The plaintiff initiated suit alleging, inter alia, that the "defendant was itself negligent by failing to supervise its employees and guests at the function and in failing to provide an alternate means of transportation . . . ." *Id.,* 336. Since the defendant was not a liquor licensee, the Court determined that the dramshop act did not provide an avenue of recovery. The remaining issue was whether the plaintiff had pled a viable common-law action. To decide that question the Court was

required to determine whether, under the facts as alleged, the defendant owed a duty to the plaintiff.

The Court determined that the plaintiff had pled a valid claim for negligent supervision. The Court based its decision on the potential for "unreasonable, foreseeable risk of harm" arising out of the allegations of that case. *Id.,* 343. The Court stated:

> [I]n order to further its business, defendant required Van Otterloo to play the role of party host in circumstances where the possibility of alcohol consumption could be presumed. In doing so, defendant created the risk that Van Otterloo would become intoxicated and endanger others, including those in his path as he traveled home. [*Id.*]

The concurring judge agreed with the decision, but stated that

> the majority implies that the mere fact that Van Otterloo was hired as a party host where alcohol would be served might be enough to support a finding of negligent supervision. I believe that more must be shown to prove the case. Specifically, plaintiff must prove that defendant knew or should have known that Van Otterloo could not be trusted with the responsibility which he was given by defendant. [*Id.,* 343-344.]

We decline to adopt the rationale of *Romeo,* and we hold that the special relationship between employer and employee does not of itself require the employer to protect third parties from off-premises injuries, either by supervising the consumption of alcohol or providing alternate transportation.

Likewise, we find in this case that the allegations do not establish a duty because it has not been alleged that the defendant knew or should have known of the existence of any special circumstances regarding Tomakowski that could establish

a duty of care to third persons. We express no opinion on the viability of such a claim, see *Costa v Able Distributors, Inc,* 3 Hawaii App 486; 653 P2d 101 (1982). The mere fact that the employee was tired does not allege a foreseeable risk that he would consume alcoholic beverages to the point where he would become a risk to others. A lengthy work day, combined with required attendance at the banquet, does not create a reasonably foreseeable risk of harm from which would arise an independent duty to supervise or provide alternative transportation.

### CONCLUSION

There is no question that the dramshop act provides the exclusive remedy against liquor licensees for conduct arising out of the furnishing of intoxicating beverages. This has long been established by case law and has been reaffirmed by a recent amendment of the dramshop act. However, the exclusive remedy provision does not exclude the bringing of independent common-law claims. To determine whether a common-law claim has been validly pled, reference must be made to the common-law obligation which would expose the defendant to liability.

In the case at bar, plaintiff alleges breach of an employer's duty to properly supervise an allegedly tired employee who is consuming alcoholic beverages and to provide transportation where it is reasonably foreseeable that the employee will undertake to drive himself away from the employment premises. Because the common-law duty to supervise an employee does not apply in these circumstances, the only duty alleged was that of Plum Hollow not to furnish Tomakowski alcoholic beverages, and the dramshop act provides plaintiff's exclusive remedy for its breach.

We hold that the plaintiff has failed to plead a valid cause of action. *Romeo v Van Otterloo* is overruled. Because we are not called upon to express an opinion as to whether a plaintiff who alleges that an employer knew or should have known that its employee could not be entrusted with the responsibility imposed by the employer so as to give rise to a foreseeable risk of harm to others has alleged a valid claim, we reverse the decision of the Court of Appeals, and remand this case to the trial court for proceedings consistent with this opinion.

RILEY, C.J., and BRICKLEY and CAVANAGH, JJ., concurred with BOYLE, J.

LEVIN, J. (*concurring*). I agree with the majority that the complaint did not state a claim for breach of an independent common-law duty.[1]

The complaint alleged that Plum Hollow owed decedent the duty of not allowing Tomakowski "to be served excessive amounts of alcoholic beverages, making him unable to properly and safely drive from his work situation."[2] This allegation

---

[1] In *Manuel v Weitzman*, 386 Mich 157; 191 NW2d 474 (1971), where this Court held that the remedy provided by the dramshop act did not exclude an independent common-law cause of action, there was evidence that the owner of a tavern had failed to take sufficient measures to eject an obstreperous and disruptive customer.

[2] The complaint adequately alleged that Plum Hollow was aware of Tomakowski's fatigue and consumption of alcoholic beverages, and that Plum Hollow should have been aware of the need and opportunity for exercising control.

The complaint alleged that Plum Hollow owed a duty and was negligent in failing to supervise the conduct of its employee, Tomakowski, "at this type of dinner and drink affair, so as to prevent those reasonably foreseeable consequences that was one of the proximate causes of this wrongful death . . . ." The complaint further alleged that, having in mind that Tomakowski had been working for thirteen hours before the dinner and that there was no public bus or other public transportation for those who, like Tomakowski, were "not reasonably fit to drive while at work" and "should not have been left

was made on the basis of 2 Restatement Torts, 2d, § 317, p 125,[3] which provides that a master is under a duty to exercise reasonable care to control his servant while acting "outside the scope of his employment" so as to prevent the servant from "conducting himself as to create an unreasonable risk of bodily harm" to others when the servant "is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant" and the master "knows or has reason to know that he has the ability to control his servant" and "of the necessity and opportunity for exercising such control."

The black letter language of § 317 could indeed be read as encompassing consumption of alcoholic beverages, but the cases that provided authority for this language are not of that kind.[4] This Court has observed that the language of the Restatement of Torts should be read in light of the factual situations in the cases that provided a basis for the

to fend for themselves to the ultimate danger of the decedent," Plum Hollow had an obligation to provide alternative means of transportation for Tomakowski.

If the only deficiency was in pleading a § 317 claim, the cause should, indeed, be remanded to provide an opportunity to file an amended complaint.

[3] See *ante,* p 193, n 6, for full text.

[4] The kind of cases in mind when § 317 was drafted are described in the reporter's notes:

Thus, a factory owner is required to exercise his authority as master to prevent his servants, while in the factory yard during the lunch hour, from indulging in games involving an unreasonable risk of harm to persons outside the factory premises. He is not required, however, to exercise any control over the actions of his employees while on the public streets or in a neighboring restaurant during the lunch interval, even though the fact that they are his servants may give him the power to control their actions by threatening to dismiss them from his employment if they persist. [2 Restatement Torts, 2d, § 317, pp 125-126.]

promulgation of the black letter.[5]

The negligence claim in *Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982), was based on § 317. The principal authority relied on in *Romeo* is *Int'l Distributing Corp v American Dist Telegraph Co,* 186 US App DC 305; 569 F2d 136 (1977), where the United States Court of Appeals for the District of Columbia Circuit held that a § 317 claim had been stated where it was alleged that ADT employees, on the premises of a customer they were privileged to enter only because they were ADT employees, had stolen merchandise belonging to the customer. The conduct that the employer allegedly had reason to know it should have controlled was thievery. In the instant case and in *Romeo,* the conduct that it is asserted the employer should have controlled is consumption of alcoholic beverages at an employer-sponsored function, conduct that it has not heretofore been thought there is a duty to control.[6]

---

[5] See *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1981).

[6] The question whether a social host should be subject to liability for dispensing excessive quantities of alcoholic beverages or for failing to provide alternative means of transportation should not depend on whether the host is an employer of some or all the guests at a function.

If this Court were to recognize social host responsibility, it is doubtful whether a different rule should obtain when the host is a dramshop.

The question whether this Court should recognize a common-law duty on the part of a social host respecting the dispensing of alcoholic beverages was adverted to in *Longstreth v Gensel,* 423 Mich 675, 685-686; 377 NW2d 804 (1985), where this Court reviewed decisions from other jurisdictions, some holding that a host serving liquor to an intoxicated adult is subject to liability for injuries inflicted on third persons, and others holding that he is not. This Court said:

These recent cases indicate that the law in other jurisdictions is in a state of flux in this area. We emphasize that that issue is not before us today and that the common-law rule remains the law until modified by this Court or the Legislature. [*Id.,* p 686.]

The claim that Plum Hollow should have provided alternative means of transportation finds no support in § 317, which speaks only of the exercise of reasonable care to control the conduct of the servant upon the premises of the master or upon premises that the servant is privileged to enter only as his servant. Tomakowski's driving that is alleged to have caused the accident occurred off the Plum Hollow premises. The accident occurred on a public highway, not "upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant.'"[7]

ARCHER, J. I respectfully dissent.

I would not overrule *Romeo v Van Otterloo,* 117 Mich App 333; 323 NW2d 693 (1982), because the facts in this case are sufficiently different to clearly distinguish the two cases.

*Romeo* involves a nondramshop defendant and therefore did not consider the factual situation presented in this case. *Romeo* should not be overruled, and the majority errs in doing so.

Finally, even under the majority's analysis, the case should be remanded to the trial court to allow plaintiff to amend her complaint to allege that the

---

Millross' brief refers to *Longstreth,* but does not refer to these or other cases, and does not address the competing arguments. The comments that *Longstreth* is "consistent with current public policy and the desire to limit alcohol-related injuries and fatalities," and the "axiom that those in a position of responsibility and authority must be vigilant to prevent or minimize drunk driving," do not call for a response to the question whether this Court should modify the common-law rule that a social host does not have responsibility for the consequences of dispensing alcoholic beverages to his guests. Absent a change in that rule, a social host has no responsibility to provide alternative means of transportation.

[7] A different question would be presented if an employer had permitted an intoxicated employee to remain on the employer's premises or enter upon the premises of a customer, and the employee had there assaulted or otherwise abused another person on the premises. Here the injury occurred neither on the employer's nor on a customer's premises, but on a public highway.

employer knew or should have known that its employee could not be trusted with the responsibility his employer gave him.

I would affirm the judgment of the Court of Appeals.

Griffin, J., took no part in the decision of this case.